GREGG F. TAYLOR AND GEORGE J. TAYLOR v. WAKE FOREST UNIVERSITY

No. 7221SC644

(Filed 20 September 1972)

Contracts § 27— football scholarship contract — refusal of plaintiff to play — summary judgment proper

Plaintiff failed to comply with his contractual obligations where he had agreed, in consideration of a scholarship award by defendant university, to maintain his athletic and scholastic eligibility for playing football, but refused to attend practice sessions in order to devote more time to his studies; since defendant university fully complied with its agreement, but plaintiff failed to do so, there was no genuine issue of material fact and summary judgment was properly entered.

APPEAL by plaintiffs from *Gambill, Judge,* 17 April 1972 Session, FORSYTH County Superior Court.

This action was instituted for the recovery of educational expenses incurred by George J. Taylor, father, and Gregg F. Taylor, son, after alleged wrongful termination of an athletic scholarship issued to Gregg F. Taylor by Wake Forest University.

As early as December 1965, football coaches at Wake Forest were in communication with Gregg Taylor soliciting his

enrollment at Wake Forest. This interest was engendered by the football playing ability of Gregg Taylor. Not only was Wake Forest interested in him, but other colleges and universities were likewise showing an interest. As a result of this interest and negotiations, Gregg Taylor and his father, George Taylor, on 27 February 1967, submitted an application entitled, "Atlantic Coast Conference Application For A Football Grant-In-Aid Or A Scholarship."

This application was accepted by Wake Forest on 24 May 1967. It provided in part:

> "This Grant, if awarded, will be for 4 years provided I conduct myself in accordance with the rules of the Conference, the NCAA, and the Institution. I agree to maintain eligibility for intercollegiate athletics under both Conference and Institutional rules. Training rules for intercollegiate athletics are considered rules of the Institution, and I agree to abide by them.

> If injured while participating in athletics supervised by a member of the coaching staff, the Grant or Scholarship will be honored; and the medical expenses will be paid by the Athletic Department.

> \* \* \* \*

> This grant, when approved, is awarded for academic and athletic achievement and is not to be interpreted as employment in any manner whatsoever."

At the time of the execution of the agreement between the Taylors and Wake Forest, some of the rules of the NCAA prohibited:

> "(a) Gradation or cancellation of institutional aid during the period of its award on the basis of a student-athlete's prowess or his contribution to a team's success.

> (b) Gradation or cancellation of institutional aid during the period of its award because of an injury which prevents the recipient from participating in athletics.

> (c) Gradation or cancellation of institutional aid during the period of its award for any other athletic reason, except that such aid may be gradated or cancelled if the recipient (1) voluntarily renders himself ineligible for

intercollegiate competition, or (2) fraudulently misrepresents any information on his application, letter-of-intent or tender, or (3) engages in serious misconduct warranting substantial disciplinary penalty.

Any such gradation or cancellation of aid is permissible only if (1) such action is taken by the regular disciplinary and/or scholarship awards authorities of the institution, (2) the student has had an opportunity for a hearing, and (3) the action is based on institutional policy applicable to the general student body."

At the time the contract was entered into, Wake Forest did not have a written Grant-In-Aid policy. This policy was not put in writing until January 1969. One of the written policy provisions was to the effect that financial aid could be terminated for "[r]efusal to attend practice sessions or scheduled work-out that are a part of the athletic program or to act in such a manner as to disrupt these sessions." The Wake Forest Athletic Director set out in an affidavit:

"[T]he policy of requiring student athletes to regularly attend practice sessions was in effect at the defendant University when the first scholarship was granted more than 30 years ago."

In compliance with the contract entered into, Gregg Taylor enrolled and became a student at Wake Forest at the beginning of the Fall Session 1967. He participated in the football program during the Fall of 1967.

At the end of that semester, his grade average was 1.0 out of a possible 4.0. Wake Forest required a 1.35 grade average after freshman year, a 1.65 grade average after sophomore year, and a 1.85 grade average after junior year. The 1.0 grade average received by Gregg Taylor for the first semester of his freshman year in the Fall of 1967 was thus below the grade average required by Wake Forest. Gregg Taylor notified the football coach on 6 February 1968 that he would not participate in regular practice sessions of the football team during the Spring of 1968 until his grades had improved. For the second semester of his freshman year, which was the Spring of 1968, Gregg Taylor obtained a 1.9 grade average. This brought his grade average above what Wake Forest required even after junior year. Despite this improvement in his grade average,

Gregg Taylor decided that he would not further participate in the football program, and in the Fall of his sophomore year, which was the Fall of 1968, Gregg Taylor attained a 2.4 grade average. Gregg Taylor continued in his refusal to participate in the football program.

Wake Forest notified Gregg Taylor on or about 1 May 1969 that a hearing would be held on 14 May 1969 before the Faculty Athletic Committee as to whether his scholarship should be terminated. At this hearing Gregg Taylor was notified that the Faculty Athletic Committee would recommend to the Scholarship Committee that his scholarship be terminated because of his failure to participate in the football program at Wake Forest. Thereafter, the Scholarship Committee of Wake Forest accepted the recommendation of the Faculty Athletic Committee, and on 10 July 1969, the Scholarship Committee notified Gregg Taylor that his scholarship had been terminated as of the end of the 1968-1969 academic year, which was the end of Gregg Taylor's sophomore year.

Gregg Taylor continued to attend Wake Forest during the 1969-1970 academic year, which was his junior year, and likewise, the academic year of 1970-1971, which was his senior year; and he received an undergraduate degree from Wake Forest in June 1971.

As a result of the termination of the scholarship, expenses in the amount of $5500 were incurred during those two academic years. It is for this sum of $5500 that this action was instituted.

The defendant Wake Forest moved for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure on the ground that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. This motion was allowed, and the plaintiffs appealed.

*Smith, Patterson, Follin & Curtis by Norman B. Smith for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice by Leslie E. Browder and Allan R. Gitter for defendant appellee.*

CAMPBELL, Judge.

Plaintiffs contend that there was a genuine issue as to a material fact and that a jury should determine whether Gregg Taylor acted reasonably and in good faith in refusing to participate in the football program at Wake Forest when such participation interfered with reasonable academic progress.

The plaintiffs' position depends upon a construction of the contractual agreement between plaintiffs and Wake Forest. As stated in the affidavit of George J. Taylor, the position of the plaintiffs is that it was orally agreed between plaintiffs and the representative of Wake Forest that:

> "[I]n the event of any conflict between educational achievement and athletic involvement, participation in athletic activities could be limited or eliminated to the extent necessary to assure reasonable academic progress."

And plaintiffs were to be the judge as to what "reasonable academic progress" constituted.

We do not agree with the position taken by plaintiffs. The scholarship application filed by Gregg Taylor provided:

> ". . . I agree to maintain eligibility for intercollegiate athletics under both Conference and Institutional rules. Training rules for intercollegiate athletics are considered rules of the Institution, and I agree to abide by them."

Both Gregg Taylor and his father knew that the application was for "Football Grant-In-Aid Or A Scholarship," and that the scholarship was "awarded for academic and athletic achievement." It would be a strained construction of the contract that would enable the plaintiffs to determine the "reasonable academic progress" of Gregg Taylor. Gregg Taylor, in consideration of the scholarship award, agreed to maintain his athletic eligibility and this meant both physically and scholastically. As long as his grade average equaled or exceeded the requirements of Wake Forest, he was maintaining his scholastic eligibility for athletics. Participation in and attendance at practice were required to maintain his physical eligibility. When he refused to do so in the absence of any injury or excuse other than to devote more time to studies, he was not complying with his contractual obligations.

The record disclosed that Wake Forest fully complied with its agreement and that Gregg Taylor failed to do so. There was no "genuine issue as to any material fact" and summary judgment was proper. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971).

We find

No error.

Chief Judge MALLARD and Judge MORRIS concur.