0256

Barbro I. BENYA, Appellant, v. Gary E. GAMBLE; Respondent.
(321 S. E. (2d) 57)

Court of Appeals

*Ronald R. Norton,* of *Bethea, Jordan & Griffin,* Hilton Head Island, *for appellant.*

*James M. Herring* and *Curtis I. Coltrane,* of *Herring & Meyer,* Hilton Head Island, *for respondent.*

Heard May 31, 1984.

Decided Sept. 10, 1984.

GOOLSBY, Judge:

The appellant Barbro I. Benya brings this action against the respondent Gary E. Gamble alleging a breach of contract to purchase real estate. The trial court directed a verdict for Gamble. We reverse the judgment of the trial court and remand the case for a new trial.

The principal issues on appeal involve whether the evidence created a jury question concerning the existence of an enforceable contract between the parties and whether a provision in a real estate sales contract providing for the forfeiture of earnest money should be considered a penalty provision rather than a provision for liquidated damages as a matter of law. Other issues relate to the admission in evidence of the subsequent sales price of the subject property, to the refusal by the trial court to allow the introduction of evidence concerning Gamble's motive in failing to close the transaction, and to the refusal by the trial court to permit Benya to amend her complaint to conform to the proof at trial.

Benya's complaint alleges that on or about March 3, 1980, she entered into a written contract to sell Gamble real property described as Lot No. 32 in Gull Point Subdivision on Hilton Head Island. According to the complaint, the sum of $10,000 "earnest money" was to be deposited and the closing date was to be no later than thirty days from March 3, 1980. Gamble, the complaint concludes, "failed and refused to effectuate closing," thus entitling Benya to recover from Gamble as liquidated damages the sum Gamble was to deposit as earnest money. In his answer, Gamble, among other things, denies the existence of the contract, asserts the statute of frauds as a bar to the enforcement of the contract, and alleges that the forfeiture provision was unenforceable because it constituted a penalty.

Upon the trial of the case and at the close of the evidence, the trial court directed a verdict in Gamble's favor finding that all the evidence, when viewed in the light most favorable to Benya, compelled the conclusion that no enforceable contract between the parties exists and that, in any event, the

forfeiture provision as a matter of law constitutes an unenforceable penalty provision.

In reviewing a directed verdict, the Court of Appeals must consider the evidence and all reasonable inferences in the light most favorable to the party against whom the directed verdict was granted; and if the evidence is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied. *Claytor v. General Motors Corp.* 277 S. C. 239, 286 S. E. (2d) 129 (1982); *see Cudd v. John Hancock Mutual Life Ins. Co.*, 279 S. C. 623, 310 S. E. (2d) 830 (S. C. App. 1983).

Our first inquiry concerns whether the evidence is susceptible of the inference that an enforceable contract exists between Benya and Gamble.

A contract exists where there is an agreement between two or more persons upon sufficient consideration either to do or not to do a particular act. *McCraw v. Llewellyn*, 256 N. C. 213, 123 S. E. (2d) 575, 94 A.L.R. (2d) 914 (1962). The essentials of a contract include an offer and acceptance. *Pierce v. Northwestern Mutual Life Ins. Co.*, 444 F. Supp. 1098 (D.S.C. 1978).

Because of the statute of frauds, certain contracts must be in writing to be enforceable. Section 32-3-10 of the South Carolina Code of Laws (1976) sets forth this State's statute of frauds. It provides in part:

No action shall be brought whereby:

(4) To charge any person upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them;...

Unless the agreement upon which such action shall be brought ... shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized.

A trial court should submit to the jury the issue involving the existence of a contract where its existence is questioned and the evidence is either conflicting or admits of more than one inference. *Capital City Garage & Tire Co. v. Electric Storage Battery Co.*, 113 S. C. 352, 101 S. E. 838 (1920); 17A C.J.S. *Contracts* § 611a at 1225 (1963). Likewise, a trial court should submit an issue concerning the statute of

frauds to the jury if there is evidence on which a finding either way might reasonably be made. 37 C.J.S. *Frauds, Statute of* § 291 at 833 (1943); *see Thompson v. Thompson,* 141 S. C. 56, 139 S. E. 182 (1927).

Although there is evidence in the record to support the conclusion that no enforceable contract exists between the parties, there is also sufficient evidence in the record to support the conclusion that one does exist.

According to Benya, Tom Jacoby, the Vice President of Lighthouse Realty, contacted her about the possibility of selling Lot 32 in Gull Point. At that time, the property was not listed for sale. Benya understood that Jacoby was representing Gamble, the President of Lighthouse Realty. On March 3, 1980, Jacoby came to her home and presented to her a written offer signed and dated that day by Gamble to purchase the property for $108,000. The offer was reflected upon a form prepared by Lighthouse Realty and was entitled "Contract of Sale Offer and Accept" [*sic*]. Typewritten terms of the offer required Gamble to deposit $10,000 as earnest money and to pay the balance due "at closing on or before May 15, 1980." The latter date, however, was stricken through by a single handwritten line and just above it the figure and word "30 days" appeared, also in handwriting. Benya signed and dated the document. At Jacoby's request, she initialed below the space where "May 15, 1980" was marked out and "30 days" substituted.

Benya's husband testified that on March 3, 1980, Jacoby telephoned to "fix a time" for him "to come over" for the purpose of obtaining Benya's signature upon the sales contract. He inquired of Jacoby whether the contract incorporated a thirty-day closing provision discussed by them earlier. Jacoby told him the provision was not in the contract but he would add it. When Jacoby arrived at the Benya home, the provision was in the contract.

Clearly, the trial court erred in concluding that the evidence could not support a finding that an enforceable contract exists between Benya and Gamble. Here, the jury could have found that Benya accepted a written offer from Gamble to purchase her property for $108,000 within thirty days from March 3, 1980, and that a memorandum of the agreement was signed by Gamble, the party charged with making it.

We next consider whether the trial court correctly held that the contract's forfeiture provision constitutes a penalty as a matter of law and is therefore unenforceable.

The parties to a real estate contract may by express provision stipulate that a particular sum shall be paid by the purchaser to the seller in the event the purchaser fails to perform. *See* 77 Am. Jur. (2d) *Vendor and Purchaser* § 490 at 616 (1975). A breach of the contract by the purchaser, however, often gives rise to the question of whether a forfeiture provision provides for liquidated damages or prescribes a penalty. If the provision creates a penalty, it will not be enforced against the purchaser and the seller's recovery will be measured by the amount of actual damage sustained by the seller as a result of the breach. *Tate v. LeMaster*, 231 S. C. 429, 99 S. E. (2d) 39 (1957).

The question of whether the sum fixed in a case of nonperformance is a penalty or liquidated damages does not necessarily depend upon the language used by the parties in the stipulation. *Ould v. Spartanburg Realty Co.*, 94 S. C. 184, 77 S. E. 866 (1913). Rather, the question "depends on the nature of the contract, (considered in the light of all its circumstances,) and the attitude of the parties under it." *Moorer v. Kopmann*, 11 Rich. Eq. 225, 231 (1860); *see* 77 Am. Jur. (2d) *Vendor and Purchaser* § 490 at 616 (1975); 25 C.J.S. *Damages* § 102a at 1034 (1966). Irrespective of its terminology, a stipulation will be held to constitute a penalty "where the sum stipulated is so large that it is plainly disproportionate to any probable damage resulting from [a] breach of the contract." *Tate v. LeMaster, supra,* 99 S. E. (2d) at 46; 22 Am. Jur. (2d) *Damages* § 219 at 305-06 (1965); *Id.* § 222 at 308; *see* Fritz, *"Underliquidated" Damages as Limitation of Liability,* 33 TEX. L. REV. 196 (1954).

Whether the sum mentioned in a contract is liquidated damages or a penalty, however, can be either a question of law to be determined by the trial judge [*see, e.q., Retailer's Service Bureau v. Smith,* 165 S. C. 238, 163 S. E. 649 (1932)] or a question of fact to be determined by the jury. *See, e.g., Tate v. LeMaster, supra.*

The provision in question is recited in a form that originated, not with Benya, but with Lighthouse Realty, Inc., a real estate company that Gamble served as President. It reads:

In the event this offer is accepted by Seller, the earnest monies deposited with Lighthouse Realty, Inc. shall be applied toward the purchase price. If Purchaser fails to fully perform his obligation hereunder, he shall forfeit the earnest money deposit, which shall be divided equally between the Seller and Lighthouse Realty, Inc., provided, however, that the amount to be received by Lighthouse Realty, Inc. shall not exceed the amount of the commission it would have earned had this sale been completed. If this offer is rejected by Seller or if Seller fails to fully perform his obligations hereunder, the earnest money deposit shall be returned in full to Purchaser.

We believe the question of whether the provision at issue provides for liquidated damages or a penalty is a question of fact for a jury to determine.

First of all, the language contained in the contract does not clearly manifest the purpose for which the provision was inserted. *See Wheeler v. Globe & Rutgers Fire Ins. Co.*, 125 S. C. 320, 118 S. E. 609 (1923). We cannot tell from reading the contract whether the provision was included to deter Gamble from breaching his contract and to penalize him for doing so or to specify a sum which the parties in good faith agreed on as representing the damages that would ensue from a breach. 25 C.J.S. *Damages* § 102a at 1035 (1966).

Secondly, whether the stipulated sum in this instance is so large that it is plainly disproportionate to any probable damage resulting from a breach of the contract is a question that cannot be determined from the record before us. Neither Gamble nor Benya offered any evidence at trial regarding the relation between the amount of the deposit money and the amount of damages, actual or anticipated, flowing from the breach. "Where there is no evidence which enables the court to find the amount of damages anticipated by the parties, it cannot say that a provision is for a penalty rather than for liquidated damages by reason of the fact that the amount is disproportionate to the actual damages." 25 C.J.S. *Damages* § 108 at 1057 (1966).

The trial court committed error, therefore, in holding as a matter of law that the provision questioned here constitutes a penalty provision and is unenforceable.

Regarding the issue of whether the trial court erred in allowing Gamble to introduce evidence that Benya sold her property for $145,000 eighteen months after the contract was breached and thereby realized a profit of $37,000 over the contract price, we note that Benya objected to this evidence on the basis that the subsequent sale occurred at "too remote" a time to constitute evidence as to the market value of the subject property at the time of the breach.

As we previously stated, Benya's recovery would be limited to the actual amount of damages she sustained as a result of breach should the provision requiring Gamble to deposit earnest money be construed as a penalty and not as liquidated damages. Generally, the measure of damages for breach of an executory contract to purchase land is the difference between the contract price and the market value of the property at the time of the breach. *Bannon v. Knauss*, 320 S. E. (2d) 470 (S. C. App. 1984); *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. 227, 227 S. E. (2d) 340 (1976); 77 Am. Jur. (2d) *Vendor and Purchaser* § 489 at 614 (1975). If the property is resold within a reasonable time after the breach, the amount received is *prima facie* evidence of its market value at the time of the breach. *Barr v. MacGlothlin*, 176 Va. 474, 11 S. E. (2d) 617 (1940); 92 C.J.S. *Vendor & Purchaser* § 537(c)(3) at 530 (1955).

Whether or not the resale occurred at too remote a time after the breach to be considered is a question for the trial court to determine in the exercise of its sound discretion. 29 Am. Jur. (2d) *Evidence* § 396 to 447 (1967). We find no abuse of that discretion here. *Cf. South Carolina State Highway Dept. v. Wilson*, 254 S. C. 360, 175 S. E. (2d) 391 (1970) (admission of sale price of two properties nine years prior to condemnation not an abuse of discretion); *Fulton County v. Power*, 109 Ga. App. 783, 137 S. E. (2d) 474 (1964) (admission of sale price of comparable land eight months after agreed time of taking within trial judge's discretion).

As to the question concerning the refusal by the trial court to allow Benya to introduce evidence regarding Gamble's motive in not performing the contract, Benya failed to include a sufficient record on which an adequate appellate review of that issue could be conducted by us. *See Germain v. Nichol*, 278 S. C. 508, 299 S. E. (2d) 335 (1983);

*Gunter's Island Hunting Club v. Hucks,* S. C. 317 S. E. (2d) 470 (S. C. App. 1984). Although the exclusion of evidence is largely within the sound discretion of the trial court and the exercise of its discretion will not be reviewed by the Court of Appeals absent a clear showing, among other things, that the trial court prejudiced the appellant's rights [*Cudd v. John Hancock Mutual Life Ins. Co., supra*], Benya nowhere sets forth in the transcript of record a sufficient proffer of the particular evidence she wished to introduce. Without an adequate proffer thereof, we cannot determine whether Benya suffered any prejudice in its exclusion. We therefore do not consider the question. *Timmons v. South Carolina Tricentennial Commission,* 254 S. C. 378, 175 S. E. (2d) 805 (1970), *appeal dismissed, certiorari denied,* 400 U. S. 986, 91 S. Ct. 460, 27 L. Ed. (2d) 435 (1971), *rehearing denied,* 401 U. S. 949, 91 S. Ct. 922, 28 L. Ed. (2d) 233 (1971); 4A C.J.S. *Appeal & Error* § 1169b(1) at 1278-81 (1957).

Finally, concerning Benya's claim that the trial court ▆▆ erred in refusing to allow her to amend her complaint to conform to the evidence produced at trial, Benya again neglects to supply us with an adequate record on which to base appellate review. Where a question involves a refusal by a trial court to allow an amendment to a pleading and the record fails to show the proposed amendment, the question will not be considered by the Court of Appeals. 4A C.J.S. *Appeal & Error* § 1159b at 1251 (1957). Because the record does not reflect anywhere the amendment Benya wished to make, we will not address the question of whether the trial court abused its discretion in refusing to allow it.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.