**Terrell JACKSON, Plaintiff,**

**v.**

**DRAKE UNIVERSITY, Defendant.**

Civ. No. 4–90–CV–70304.

United States District Court,
S.D. Iowa, C.D.

Dec. 6, 1991.

Reconsideration Granted Feb. 13, 1992.

Lawrence L. Marcucci, West Des Moines, Iowa, for plaintiff.

Terrence A. Hopkins, Hopkins & Huebner, James R. Swanger, Robert D. Andeweg, Brown, Winick, Graves & Donnelly, Des Moines, Iowa, for defendant.

MEMORANDUM OPINION, RULING PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND ORDER

VIETOR, Chief Judge.

Plaintiff Terrell Jackson was recruited to attend, and play basketball at, Drake University. Jackson has several complaints regarding the way he was treated and the manner in which the men's basketball program was run during the period that he was a member of the team. Jackson originally brought suit against defendant Drake University in the Iowa District Court for Polk County. Jackson's complaint states six counts: (I) breach of contract; (II) negligence; (III) negligent misrepresentation; (IV) fraud; (V) negligent hiring; and (VI) violation of civil rights based on 42 U.S.C. § 1981. Drake removed the action to this court on June 4, 1990, based on the section 1981 claim and diversity of citizenship.

Drake moves for summary judgment, and Jackson resists. The motion is submitted.[1]

---

1. On October 15, 1991, this court entered an order granting plaintiff to and including November 29, 1991, to supplement his resistance to defendant's motion for summary judgment. Plaintiff has not supplemented his resistance.

## Summary Judgment Standard

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e). To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.,* 837 F.2d 836, 838 (8th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf,* 669 F.Supp. 291, 295 (D.Minn.1987). The quantum of proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Johnson,* 669 F.Supp. at 295–96.

■ On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *United States v. City of Columbia, Mo.,* 914 F.2d 151, 153 (8th Cir. 1990); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990).

## Facts

The following facts are undisputed or represent plaintiff's version. Defendant Drake University is a private educational institution incorporated under the laws of Iowa. In 1988, Drake began looking for a new head coach of the men's basketball team. Drake athletic director Curtis Blake was appointed chairman of the search committee formed to select the new head coach.

In March 1988, Tom Abatemarco was hired as the Drake men's basketball team head coach. Blake made the decision to hire Abatemarco. He based his decision upon, among other things, the search committee's unanimous recommendation. Blake's decision was reported to Michael Ferrari, President of Drake. Ferrari subsequently confirmed Blake's decision. At the time of making his decision, Ferrari did not have all of the information regarding Abatemarco that Blake had. Specifically, Ferrari was not aware of a *Sports Illustrated* article Blake had read that dealt with, in part, Abatemarco's reputation as a recruiter.

Sometime after assuming the responsibilities of head coach, Abatemarco began recruiting plaintiff Jackson to attend and play basketball at Drake. In recruiting Jackson, Abatemarco emphasized the high quality of education that Jackson would receive at Drake. Abatemarco also told Jackson that the basketball program would be structured around Jackson and he would be the star of the team. Subsequently, Jackson enrolled at Drake in the fall of 1988.

Drake provided Jackson with the assistance of a tutor while playing basketball. Abatemarco and his coaching staff scheduled basketball practices which interfered with Jackson's allotted study time and tutoring schedule. Jackson attended these practices under threats that his scholarship would be taken away if he did not comply. Abatemarco's coaching staff prepared term papers for Jackson which they expected Jackson to turn in for credit as his own work. Jackson refused the offer of term papers provided by the staff. Abatemarco and his staff recommended that Jackson take certain "easy" courses in order to maintain his academic eligibility. Jackson refused to take the recommended easy courses and selected his own courses. Jackson does not question the adequacy of the tutoring and has no complaint with the quality of classroom instruction that he received.

During practices, Abatemarco singled out Jackson and required him to do extra running and exercises in the form of running laps and sprints, and doing situps and pushups. Abatemarco did not, however, physically injure Jackson. Abatemarco yelled at Jackson and called him foul and derogatory names. In January, 1990, Jackson quit the Drake basketball team.

Jackson and Drake executed financial aid agreements on July 12, 1988 and May 11, 1989. The agreements are the only written agreements that exist between the parties,

and Drake has fully performed the obligations imposed on it by the agreements.

### Count I: Breach of Contract

Jackson complains that Drake breached its contract with him by: failing to provide independent and adequate academic counseling and tutoring; failing to provide adequate study time; requiring Jackson to turn in plagiarized term papers; disregarding Jackson's progress toward an undergraduate degree; and urging Jackson to register for easy classes. Jackson also contends that the financial aid agreements granted him the right to an educational opportunity and the right to play basketball for a Division I school. Drake argues that it is entitled to summary judgment on Count I because it has performed all of the obligations required by the financial aid agreements.

The financial aid agreements entered into by Drake and Jackson constitute valid contracts. *See Hysaw v. Washburn University*, 690 F.Supp. 940, 946–47 (D.Kan.1988); *Taylor v. Wake Forest University*, 16 N.C.App. 117, 121, 191 S.E.2d 379, 382 (1972). Jackson has admitted that Drake has performed all obligations imposed by the financial aid agreements, but argues that implicit in the agreements is the right to play basketball. The financial aid agreements make no mention of such a right. Under Iowa law, where the language of a contract is clear and unambiguous, the language controls. *Ridinger v. State*, 341 N.W.2d 734, 737 (Iowa 1983). The court concludes that the financial aid agreements do not implicitly contain a right to play basketball. *See Hysaw v. Washburn University*, 690 F.Supp. at 946–47 (tuition agreement did not make promise that student-athletes would be allowed to play football). Therefore, and because Drake has met all its obligations under the agreements, Drake's motion for summary judgment on the breach of contract claim will be granted.

### Count II: Negligence

Jackson contends that by recruiting him to attend Drake University, Drake "undertook a duty to [Jackson] to provide an atmosphere conducive to academic achievement." According to Jackson, Drake breached this duty by requiring and urging him to enroll in easy courses which would ensure his academic eligibility regardless of the courses' academic worth or his progress toward an undergraduate degree. Jackson also contends that Drake breached its duty by scheduling practices which substantially interfered with his study time and tutoring schedule, and by requiring him to attend these practices under threats that his scholarship would be taken away if he did not comply. Drake argues that Jackson's negligence claim is a claim for "educational malpractice," a claim not recognized under Iowa law.

A prerequisite to establishing a claim of negligence is the existence of a legal duty. *Shaw v. Soo Line R.R.*, 463 N.W.2d 51, 53 (Iowa 1990). Not every claim of negligence creates a civil cause of action, *Engstrom v. State*, 461 N.W.2d 309, 315 (Iowa 1990), and whether a legal duty arises out of a parties' relationship sufficient to form the basis of a claim of negligence is a matter of law for the court to decide. *Shaw v. Soo Line R.R.*, 463 N.W.2d at 53. In determining whether the law imposes a duty, factors to be considered include "[t]he likelihood of injury from the existence of the condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant...." *Figueroa v. Evangelical Covenant Church*, 879 F.2d 1427, 1437–38 n. 12 (7th Cir.1989).

Jackson cites several cases in support of his claim, arguing that common law tort principles apply to this case rather than an educational malpractice analysis. Jackson's argument is not persuasive. He argues that the cases cited support the proposition that the court should find Drake had a duty to provide an atmosphere conducive to academic achievement. The cases cited, however, are clearly distinguishable from the instant case. In the cited cases, the courts hold that a school bus driver must exercise the care of an ordinarily prudent bus driver, *Johnson v. Svoboda*, 260 N.W.2d 530, 534 (Iowa 1977) (involving death of a five-year-old child); that a school district owes a duty of reasonable care to a student in a woodworking class, *Fallin v. Maplewood–North St. Paul District No. 622*, 362 N.W.2d 318, 321–22 (Minn.1985) (student injured his thumb on a power saw); and that a physical education instructor can be negligent in running a physical education class, *Tiemann v. Independent School District No. 740*, 331 N.W.2d 250, 251 (Minn.1983) (vaulting horse was used for class despite fact that pommels were removed; student suffered permanent physical injuries during vault when finger stuck in hole left by removal of pommels causing student to fall). These cases all

involve specific negligent acts or omissions resulting in death or physical injury.

In support of its motion for summary judgment on Jackson's negligence claim, Drake relies on two educational malpractice cases. *See Ross v. Creighton University*, 740 F.Supp. 1319 (N.D.Ill.1990) (former student-athlete had no cause of action against private university for allegedly recruiting him and repeatedly enrolling him despite the knowledge that he was incapable of performing the academic work required to make educational progress); *Moore v. Vanderloo*, 386 N.W.2d 108 (Iowa 1986) (in suit by a patient against college of chiropractic for alleged negligent failure to teach one of its former students, the treating chiropractic, the risks associated with certain techniques, the court held there is no recognized cause of action for educational malpractice under Iowa law). While factually distinguishable from the present case, the court finds the policy considerations discussed by the courts in *Moore* and *Ross* in declining to find an educational malpractice claim in those cases to be important considerations in the present case.

■ The jurisdiction of this court for Jackson's negligence claim is based upon diversity of citizenship. When jurisdiction is based on diversity of citizenship, "the law to be applied ... is the law of the State." *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). If Iowa law is unclear or unsettled, this court must judicially estimate what the Iowa Supreme Court would decide. *Gearhart v. Uniden Corp.*, 781 F.2d 147, 149 (8th Cir.1986); *Heeney v. Miner*, 421 F.2d 434, 439 (8th Cir.1970).

■ In *Moore*, the Iowa Supreme Court articulated five reasons for not recognizing a cause of action for educational malpractice. *See Moore v. Vanderloo*, 386 N.W.2d at 114–15. In the context of the case now before this court, several of those reasons provide a strong indication that the Iowa Supreme Court, if called upon to do so, would not recognize a negligence claim in this case. First is a lack of a satisfactory standard of care by which to measure the defendant's conduct. *See Moore v. Vanderloo*, 386 N.W.2d at 114. Second, to recognize a negligence claim based on the facts before the court could reasonably be expected to result in an enormous amount

of litigation involving college athletic programs. *See id.* at 115. To recognize a negligence claim in this case "would force the courts blatantly to interfere with the internal operations and daily workings of an educational institution." *Id.* Finally, it has been recognized that academic freedom thrives on the autonomous decision-making of the academy itself. *Id.* Though Jackson's claim does not specifically challenge the "academic" freedom of Drake, in effect, it does ask the court to pass judgment on the manner in which Drake runs its men's basketball program, a program which does have an academic component. This court judicially estimates that the Iowa Supreme Court would not recognize plaintiff's negligence claim. Drake's motion for summary judgment on Count II, therefore, will be granted.

### Count III & Count IV: Negligent Misrepresentation & Fraud

■ To properly state a claim of negligent misrepresentation, Jackson must allege that the defendant, in the course of its business or profession or employment, supplied false information for the guidance of others in their business transactions, that the information was justifiably relied on by the plaintiff, and the defendant failed to exercise reasonable care or competence in communicating the information. *Beeck v. Kapalis*, 302 N.W.2d 90, 96–97 (Iowa 1981). To state a claim for fraud, Jackson must allege a material misrepresentation, made knowingly, with the intent to induce Jackson to act, upon which he justifiably relied, with damages. *Id.* at 94.

■ Accepting Jackson's version of the facts, Drake, through Abatemarco, made representations to Jackson that it was committed to academic excellence and that this commitment carried over to the athletic department. Drake promised Jackson a college education and full support services so he could fully utilize his educational opportunity while playing basketball. Jackson relied on Drake's representations, and moved from Chicago to Des Moines to attend Drake. Jackson claims that Drake did not exercise reasonable care in making the representations and had no intention of providing the support services it had promised. Drake argues that these are claims for educational malpractice, a claim not recognized under Iowa law.

The court finds that the policy considerations discussed previously do not weigh as heavily in favor of precluding the claims for negligent misrepresentation and fraud as in the claim for negligence. Furthermore, Jackson has designated specific facts that show there is a genuine issue for trial on these counts. Drake's motion for summary judgment on Counts III & IV will be denied.

### Count V: Negligent Hiring

■ Iowa has recognized negligent hiring as a cause of action when the employer owes a special duty to a third party. *D.R.R. v. English Enterprises*, 356 N.W.2d 580, 583 (Iowa Ct.App.1984). Jackson argues that Drake had a duty to Jackson to hire a coach that would follow NCAA and Drake rules and regulations, and who would emphasize academics to a level commensurate with the level of academics which Drake portrays to its athletes, students, and the public. Jackson contends that Drake breached its duty by failing to sufficiently investigate the background of Abatemarco, thereby hiring a head coach who had a reputation for underhandedness, academic impropriety, and player abuse. Jackson bases his claim of negligent hiring in large part, if not completely, on the *Sports Illustrated* article which athletic director Blake read. The court finds no indication, in the article or otherwise, that Abatemarco had a reputation for underhandedness, academic impropriety, or player abuse.[2] Because Jackson has failed to designate specific facts which show there is a genuine issue for trial on his negligent hiring claim, Drake's motion for summary judgment on Count V will be granted.

### Count VI: 42 U.S.C. § 1981

■ Jackson's civil rights claim is based upon Abatemarco's treatment of Jackson while Jackson was a member of the Drake basketball team. Jackson argues that Drake, through Abatemarco, intentionally threatened to revoke his scholarship, physically and mentally abused him, humiliated him and deemphasized his education. Jackson contends that Abatemarco's abusive treatment prevented him from enforcing his contract with Drake. Jackson, who is black, also alleges that as a result of this conduct he has not enjoyed the full and equal protection of the laws or security of his person or property and has been subject to punishment and pains because of his race and disadvantaged background in violation of 42 U.S.C. section 1981.

Section 1981 protects two rights: it prohibits racial discrimination in (1) the making, and (2) enforcement of, employment contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). Concerning the first of these rights, Jackson does not claim that he was discriminated against in his right to contract; rather, his claims are restricted to post-contract conduct on the part of Abatemarco. The second of these rights, the right to enforce contracts, "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race . . . ." *Id.* at 177, 109 S.Ct. at 2373. Jackson makes no claim that Drake has impaired his ability to enforce his contract through the legal process.

■ Section 1981 does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract negotiations. *Id.* at 171, 109 S.Ct. at 2369; *cf. Taggart v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947, 948 (8th Cir.1991) (racially discriminatory discharge claims may not be brought under section 1981). As a matter of law, Jackson is not entitled to recover damages for violation of section 1981 in this case. Accordingly, Drake's motion for summary judgment on Count VI will be granted.

### Rulings and Order

The motion for summary judgment by defendant Drake University, filed May 6, 1991, is GRANTED as to Counts I, II, V, and VI of plaintiff Terrell Jackson's complaint, but is DENIED as to Counts III and IV.

IT IS ORDERED that Counts I, II, V, and VI be DISMISSED.

---

2. Assuming Jackson could show that Abatemarco did indeed have such a reputation, and that Drake knew or should have known of this reputation, Drake's motion would still be granted. The discussion in *English Enterprises* concerning the recognition of a negligent hiring cause of action can fairly be read as limiting the cause of action to situations where the third party is actually physically injured. *See D.R.R. v. English Enterprises*, 356 N.W.2d at 583–86.

RULINGS GRANTING MOTION TO RE-
CONSIDER, PARTIALLY GRANT-
ING MOTION FOR SUMMARY
JUDGEMENT, AND ORDER

Defendant Drake University moves the court to reconsider its ruling on defendant's motion for summary judgement on Count III (negligent misrepresentation) of plaintiff Terrell Jackson's complaint.

Defendant's motion asserts a legal theory that was not advanced in its original summary judgement papers.[1] Plaintiff has failed to resist even though the time within which to resist was extended.[2]

The new legal theory advanced by defendant has merit. A cause of action for negligent misrepresentation may be asserted against defendants in the business of supplying information. *Budget Mktg., Inc. v. Centronics Corp.,* 927 F.2d 421, 428 (8th Cir.1991) (citing *Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 581 (Iowa 1990)). Plaintiff has asserted no facts to show that defendant is in the business of supplying information. Furthermore, the doctrine of negligent misrepresentation is applicable only to plaintiffs who use the information supplied in a transaction with a third party. *Colorado Nat'l Bank v. Adventura Associates,* 757 F.Supp. 1167, 1172 (D.Colo.1991) (citing *Alfa–Laval,* 454 N.W.2d at 581). Plaintiff's negligent misrepresentation claim is based on information supplied to him by defendant, through Tom Abtaemarco. There are no facts indicating plaintiff relied on this information in a transaction with a third party. Defendant's motion for summary judgement on Count III will be granted.

Rulings and Order

The motion to reconsider, filed by defendant Drake University on December 24, 1991, is GRANTED.

The motion for summary judgement by defendant Drake University, filed May 6, 1991, is GRANTED as to Count III of plaintiff's complaint.

IT IS ORDERED that Count III of plaintiff Terrell Jackson's complaint, filed June 4, 1990, be dismissed.

Dated this 13 day of February, 1992.

---

1. Defendant's practice in this matter is certainly not recommended. Defendant should have asserted all of its legal theories in support of its original motion for summary judgement.

2. Defendant filed its motion to reconsider on December 24, 1991. On January 16, 1992, an order was entered extending plaintiff's time for filing a resistance to and including January 23, 1992.