529 S.E.2d 293

**R.J. HENDRICKS, II, Appellant,**

v.

**CLEMSON UNIVERSITY, Respondent.**

**No. 3137.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided March 20, 2000.

Rehearing Denied May 27, 2000.

Scott M. Anderson, of Robertson & Anderson, of Greenville, for appellant.

Jack Griffeth and Amy Richmond, both of Love, Thornton, Arnold & Thomason, of Greenville, for respondent.

CURETON, Judge:

R.J. Hendricks, II sued Clemson University for negligence, breach of fiduciary duty, and breach of contract alleging improper academic advisement by Clemson's athletic/academic advisor rendered him ineligible to play baseball under National Collegiate Athletics Association (NCAA) regulations. The trial court granted Clemson summary judgment on all causes of action. Hendricks appeals. We affirm in part, reverse in part and remand.

## FACTS

Hendricks attended St. Leo College in Florida on a baseball scholarship for the first three years of his college education. St. Leo is a small college with a NCAA Division II baseball program. Hendricks's scholarship at St. Leo covered seventy-five percent of his costs for tuition, room, and board. While at St. Leo, Hendricks majored in business administration with a specialization in hotel/restaurant management.

After playing baseball at St. Leo for three years, Hendricks decided to transfer to a larger school. He contacted Clemson assistant coach Tim Corbin. Corbin was a former assistant coach with Presbyterian College and, as such, had recruited

Hendricks out of high school. Clemson requested permission from St. Leo to contact Hendricks for transfer and a one-time transfer exception. St. Leo granted the requests. St. Leo indicated that Hendricks would fulfill the satisfactory progress requirement for continued participation in baseball at St. Leo.

Upon transfer to Clemson, Hendricks received a $250 "book scholarship." Hendricks paid his own tuition, room, board, and other expenses.

Over the summer, Hendricks communicated with Barbara Kennedy–Dixon, an academic advisor in Clemson's Student–Athlete Enrichment Program, about enrolling in classes. It is undisputed Hendricks never intended to graduate from Clemson, but planned to return to St. Leo and graduate in December of 1996. Hendricks hoped to use some of the hours he earned at Clemson toward his degree from St. Leo. Hendricks believed Kennedy–Dixon was advising him to take classes that would ensure his NCAA baseball eligibility and also would be transferable to St. Leo.

Because Clemson did not offer Hendricks's major, Kennedy–Dixon advised Hendricks to declare himself a speech and communications major with a cluster minor in administration. Kennedy–Dixon originally registered Hendricks in fifteen credit hours for the fall semester. A week and a half into the fall semester, Kennedy–Dixon realized she had not evaluated whether Hendricks was in compliance with the NCAA's fifty percent rule, which requires a student athlete to complete at least fifty percent of the course requirements for his degree to be eligible to compete during his fourth year of collegiate enrollment. She then advised him to drop one class and add two speech classes, increasing his course credits from fifteen to eighteen hours. According to Kennedy–Dixon, she asked her graduate student to consult with one of her colleagues about the situation, but she did not recall any feedback from the consultation.

Hendricks passed all eighteen hours. However, shortly before the spring semester began, Kennedy–Dixon realized she had miscalculated the classes he needed to be eligible to play baseball. A student pursuing a speech and communications studies major with a cluster minor in administration may have thirty-two elective hours, with eleven hours from lower

level foreign language classes, which are prerequisites for the required upper level foreign language class. Hendricks had taken no foreign language classes. Kennedy–Dixon failed to subtract the eleven hours of foreign language from the thirty-two available elective hours. Hendricks only had twenty-one hours of electives available rather than thirty-two. Six of the eighteen hours Hendricks took during the fall semester were excess electives. To be eligible to play baseball, Hendricks should have enrolled in twenty course hours toward his major during the fall semester.

During the time she was advising Hendricks, Kennedy–Dixon was experiencing a personal crisis. She gave birth to a premature baby during the summer of 1995. The baby was in a neonatal intensive care unit in a hospital in Greenville until October 1995. She commuted to Greenville from Clemson daily to bond with the baby.

Clemson requested a waiver of the fifty-percent rule from the NCAA for Hendricks. Kennedy–Dixon provided a written statement detailing her mistake and her belief that Hendricks would have successfully completed the classes necessary for eligibility if he had enrolled in them. The NCAA, however, denied the waiver request. Although he remained at Clemson for the spring semester, Hendricks could not play baseball. He received credit for all of the academic classes he completed at Clemson. However, some of the hours he earned at Clemson did not count toward his graduation from St. Leo.

Clemson won the NCAA regional title during the spring of 1996 and went to the College World Series. Jackson Scott Leggett, Clemson's head coach, stated he did not have a limit on the non-traveling team roster. The traveling team, however, was limited to twenty-five players. Based on Hendricks's performance in fall practice, Leggett believed it would have been very difficult for Hendricks to make the traveling team.

Hendricks returned to St. Leo for the fall 1996 semester. Because of his transfer to Clemson, he lost his scholarship and had to pay full tuition. After graduating from St. Leo in December 1996, Hendricks enrolled in classes at the college in order to be able to play baseball during the spring semester. He received approximately $2000 in financial assistance that semester.

At the time of the summary judgment hearing, Hendricks had graduated from college, worked in his father's laundry business and lived with his parents.

Hendricks sued Clemson for negligence, breach of fiduciary duty, and breach of contract. His alleged damages included his tuition, room, board and living expenses at Clemson; tuition, room, board and living expenses for the fall 1996 and spring 1997 semesters at St. Leo; lost wages from September 1996 to September 1997; emotional suffering and lost enjoyment of life; lost 1996 College World Series experience; lost opportunity for playing NCAA Division I baseball; and lost professional baseball opportunities.

The trial court granted Clemson's motion for summary judgment. In so doing, the court held Clemson had not breached any contractual duty owed to Hendricks because all aspects of Hendricks's scholarship obligations were fulfilled. The court also ruled Hendricks had not advanced any tort theory that would permit recovery under the South Carolina Tort Claims Act because Clemson's course of action did not constitute gross negligence. The court found Hendricks alleged a form of "educational malpractice" based on simple negligence under the proposition that Clemson assumed some fiduciary duty. It rejected this action holding the legislature disallowed this type of claim by limiting liability of public educational institutions to acts of gross negligence. As a separate ground for granting summary judgment, the trial court concluded Hendricks had not suffered any measurable or ascertainable damages. It found Hendricks could not claim any damages for tuition or other college expenses because his scholarship terms were honored. It ruled Hendricks's other claims for damages were too speculative.

## LAW/ANALYSIS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Café Assocs., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E.2d 162 (1991). In ruling on a motion for summary judgment, the evidence and the inferences should be viewed in the light most favorable to the nonmoving party. *Id.*

*I. Negligence Claim Under the South Carolina Tort Claims Act*

█ Hendricks argues the trial court erred in deciding the issue of gross negligence on summary judgment. In its order, the circuit court held, as a matter of law, that "Clemson's conduct does not rise to the level of gross negligence." Hendricks asserts the issue of whether Clemson's actions were grossly negligent is for the jury to determine. We agree.

The South Carolina Tort Claims Act shields state educational institutions such as Clemson from liability resulting from:

the responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student ... except when the responsibility or duty is exercised in a grossly negligent manner[.].

S.C.Code Ann. § 15–78–60(25) (Supp.1998).

█ Gross negligence is the intentional, conscious failure to do something which one ought to do or the doing of something one ought not to do. *Hollins v. Richland County Sch. Dist. One*, 310 S.C. 486, 427 S.E.2d 654 (1993). It is the failure to exercise slight care. *Clyburn v. Sumter County Sch. Dist. # 17*, 317 S.C. 50, 451 S.E.2d 885 (1994). Where a person is so indifferent to the consequences of his conduct as not to give slight care to what he is doing, he is guilty of gross negligence. *Jackson v. South Carolina Dep't of Corrections*, 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989), *aff'd*, 302 S.C. 519, 397 S.E.2d 377 (1990). Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports only one reasonable inference. *Clyburn*, 317 S.C. 50, 451 S.E.2d 885.

In this case, the trial court held Clemson's course of action did not evidence a failure to exercise slight care and, therefore, did not amount to gross negligence. We disagree. Initially, Kennedy–Dixon failed to evaluate whether Hendricks would be able to comply with the NCAA's fifty-percent rule. Kennedy–Dixon realized this error approximately a week and a half into the semester and advised Hendricks to increase his course load in an attempt to comply with the NCAA rule. Kennedy–Dixon failed to consult Clemson's athletic department supervisor or NCAA compliance director, although that was standard procedure. (Kennedy–Dixon stated she was

unaware of this policy.) In her statement to the NCAA, she wrote, "I felt certain that he would meet the 50 percent rule if he passed all 18 hours in the fall semester 1995."

At the beginning of the spring semester, Kennedy–Dixon realized Hendricks still would be unable to comply with the NCAA rule because six hours he had taken were electives that did not count for purposes of the rule. After realizing the second error, Kennedy–Dixon and other members of Clemson's athletic department tried to obtain a waiver of the fifty percent rule from the NCAA in order to allow Hendricks to play baseball.

Hendricks alleges Kennedy–Dixon's actions constitute gross negligence because she did not thoroughly review Hendricks's transcript to determine NCAA eligibility. Hendricks also maintains Kennedy–Dixon's failure to consult her supervisors or adequately review Hendricks's transcript after realizing her first mistake constitutes gross negligence. Thirdly, Hendricks maintains Kennedy–Dixon's lack of knowledge of the requirement that she notify her supervisor constituted gross negligence. Although we empathize with Kennedy–Dixon's personal struggles during Hendricks's time at Clemson, we cannot say her actions did not constitute gross negligence as a matter of law. Because gross negligence is ordinarily a mixed question of law and fact, and the facts of this case are susceptible of more than one inference, the trial court erred in granting Clemson summary judgment on the negligence cause of action.

■ Clemson maintains Kennedy–Dixon's actions cannot constitute gross negligence because the university has no duty to ensure students' athletic eligibility. We disagree. "The common law ordinarily imposes no duty on a person to act. If an act is voluntarily undertaken, however, the actor assumes the duty to use due care." *Miller v. City of Camden,* 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997).

In the complaint, Hendricks alleged "Dixon's duties as an agent and employee of Defendant included advising Plaintiff as to the number and type of classes Plaintiff should take to achieve and maintain athlete [sic] eligibility." The complaint further alleged that "Dixon undertook at the commencement of the fall, 1995, semester to advise Plaintiff as to the number and type of classes Plaintiff should take to achieve and main-

tain athletic eligibility, and did so advise Plaintiff." At the summary judgment hearing, Hendricks asserted:

> ... the controlling law on this is that Clemson University in the form of the academic advisor assumed the duty.... once [Kennedy–Dixon] assumed the duty she had an obligation to exercise in this case at least slight care and she's failed to exercise that slight care.

Kennedy–Dixon was hired as an "athletic academic counselor." The position required that she periodically meet with the registrar to discuss relevant changes in NCAA requirements and undergo an annual NCAA compliance test. In fact, Kennedy–Dixon testified to her "primary two-fold duties," which were

> ... to make sure athletes are maintaining academic excellence as they work towards graduation, and secondly to— along with the primary goal is to make sure the athletes are eligible according to the NCAA regulations.

Thus, the evidence creates at least a factual dispute as to whether Clemson undertook a duty to advise Hendricks concerning compliance with NCAA eligibility standards. Therefore, the trial court erred in granting summary judgment as to the negligence claim.

## II. Breach of Fiduciary Duty

Hendricks argues the trial court erred in ruling South Carolina does not recognize a cause of action for breach of fiduciary duty in an educational setting. He asserts a breach of fiduciary duty is not a tort and the trial court erred in applying the South Carolina Tort Claims Act standard to his cause of action. We agree with the trial court's determination that the Tort Claims Act is applicable, but find the trial court erred in summarily dismissing the breach of fiduciary duty claim.

The Restatement 2nd of Torts recognizes that one "who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act." Restatement 2nd Torts § 874 cmt. (C) (1979). South Carolina cases have considered breaches of fiduciary duty as the basis for contractual and tort actions. See e.g., Corley v. Ott, 326 S.C. 89, 485 S.E.2d 97 (1997) (dissolution of partnership based on breach of

fiduciary duty); *Jacobson v. Yaschik*, 249 S.C. 577, 155 S.E.2d 601 (1967) (holding an accounting in equity could be had in tort case where the complaint charged fraud involving a fiduciary and trust relationship); *Designer Showrooms, Inc. v. Kelley*, 304 S.C. 478, 405 S.E.2d 417 (Ct.App.1991) (finding constructive fraud arising out of breach of fiduciary duty); *Anthony v. Padmar, Inc.*, 320 S.C. 436, 465 S.E.2d 745 (Ct.App.1995) (breach of fiduciary duty and breach of partnership contract as basis of rescission of sale of partnership assets); *Loftis v. Eck*, 288 S.C. 154, 341 S.E.2d 641 (Ct.App. 1986) (construing complaint to allege breach of fiduciary duty to affirm setting aside deed).

██ The essential elements in a negligence action are: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty. *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 468 S.E.2d 292 (S.C.1996); *Vinson v. Hartley*, 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996).

In his complaint, Hendricks alleged Clemson, through its agent Kennedy–Dixon, owed a fiduciary duty to competently advise him concerning course requirements necessary to achieve eligibility to play baseball. Hendricks further alleged he relied upon Kennedy–Dixon's judgment and advice to his detriment. Hendricks's allegations for breach of fiduciary duty sound in negligence. Accordingly, we reject Hendricks's assertion that his cause of action for breach of fiduciary duty is not controlled by the South Carolina Tort Claims Act.

██ Because we reverse the trial court's ruling as to whether Kennedy–Dixon's actions constitute gross negligence, we must address whether a fiduciary duty existed between Clemson University and Hendricks. "A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992). A relationship must be more than casual to equal a fiduciary relationship. *Steele v. Victory Sav. Bank*, 295 S.C. 290, 368 S.E.2d 91 (Ct.App.1988). "Courts of equity have carefully refrained from defining the particular instances of fiduciary relationship in such a manner that other

and perhaps new cases might be excluded and have refused to set any bounds to the circumstances out of which a fiduciary relationship may spring." *Brown v. Pearson,* 326 S.C. 409, 422–423, 483 S.E.2d 477, 484 (Ct.App.1997) (citations omitted).

 In South Carolina, the existence of a fiduciary duty may be a factual question for the jury to determine. *See Hotz v. Minyard,* 304 S.C. 225, 403 S.E.2d 634, 637 (1991) ("We find the evidence indicates a factual issue whether [defendant] breached a fiduciary duty to [plaintiff] . . ."); *State Farm Mut. Auto. Ins. Co. v. Turner,* 303 S.C. 99, 399 S.E.2d 22 (Ct.App.1990) (jury question raised as to whether insurance adjuster had fiduciary duty to tell victim he represented both victim and tort-feasor); *Steele,* 295 S.C. 290, 368 S.E.2d 91(whether remitter reposed special confidence and trust in bank sufficient to create a fiduciary relationship between payee bank and remitter was a factual question to be determined by the jury).

 In the complaint, Hendricks has alleged sufficient facts to support a claim for breach of fiduciary duty:

19) Defendant and its agent and employee Dixon owed Plaintiff a fiduciary duty to competently advise Plaintiff as to course requirements to achieve academic eligibility to play baseball for Defendant and otherwise advance his baseball career.

20) Plaintiff placed trust, confidence and reliance upon the judgment and advice of Defendant.

21) Defendant breached its fiduciary duty to Plaintiff by failing to correctly advise Plaintiff as to his course requirements to maintain academic eligibility for the 1996 baseball season.

22) As a direct and proximate result of Defendant's breach of the· fiduciary duty, Plaintiff has been injured and damaged, incurred substantial expenses, including but not limited to lost tuition, lost income and lost opportunity.

We have previously determined that a factual issue exists as to whether Clemson, through Kennedy–Dixon, assumed a duty to advise Hendricks, We further hold that there is a factual

question concerning whether any duty that exists constitutes a fiduciary duty.

### III. Hendricks's Contract Claim

 Hendricks argues the trial court erred in ruling no breach of contract had occurred because he received all benefits to which he was entitled as a student. He contends he agreed to enroll at Clemson and pay tuition, and Clemson agreed it would provide him with a scholarship to pay the cost of his books, advise him as to what classes and number of class hours he needed to be athletically eligible, and give him the opportunity to play baseball.

 In South Carolina, the formation of a contract is governed by well-settled principles. "A contract exists where there is an agreement between two or more persons upon sufficient consideration either to do or not to do a particular act." *Benya v. Gamble*, 282 S.C. 624, 628, 321 S.E.2d 57, 60 (Ct.App.1984).

Courts have recognized the contractual nature of the relationship between a student and university or college. *See e.g., Ross v. Creighton Univ.*, 957 F.2d 410 (7th Cir.1992) (remanding case to determine whether university had breached specific promise to student athlete); *Begley v. Mercer Univ.*, 367 F.Supp. 908 (E.D.Tenn.1973); *Wickstrom v. North Idaho College*, 111 Idaho 450, 725 P.2d 155 (1986) (holding valid cause of action in contract could exist if the terms of implied contract between student and college were not complied with); *Tolman v. CenCor Career Colleges, Inc.*, 851 P.2d 203 (Colo.Ct.App. 1992) (ruling that if properly pleaded and proved, breach of contract and deceit claims may be brought by student against educational institution); *Taylor v. Wake Forest Univ.*, 16 N.C.App. 117, 191 S.E.2d 379 (1972) (finding university fully complied with its agreement while student athlete failed to do so).

The Supreme Court of Idaho described the basis of the contractual relationship:

Since a formal contract is rarely prepared, the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and

other publications; custom and usages can also become specific terms by implication.

*Wickstrom,* 725 P.2d at 157.

In *Ross,* the Seventh Circuit explained, "[t]o state a claim for breach of contract, the plaintiff must ... point to an identifiable contractual promise that the defendant failed to honor." 957 F.2d 410, 416–417.

To adjudicate Hendricks's claim for breach of contract, the trial court must determine the terms of Hendricks's contract with Clemson and whether Clemson breached that contract by advising Hendricks to take classes which rendered him ineligible to play baseball. We find at least a genuine issue of material fact exists as to these questions. Therefore, we remand this issue for further development of the facts. *See Hook v. Rothstein,* 275 S.C. 187, 268 S.E.2d 288 (1980) (Summary judgment should not be granted when inquiry into the facts is desirable to clarify the application of the law.).

## IV. Damages

 Finally, Hendricks argues the trial court erred in holding, as a matter of law, that Hendricks suffered no measurable damages. In the proceedings before the trial court, Hendricks argued he was entitled to the cost of his semester at Clemson, including tuition, room, board, and living expenses. He also alleged he was entitled to the costs of completing his education at St. Leo because he forsook his athletic scholarship there to attend Clemson. Finally, Hendricks asked for damages for loss of opportunity, including loss of the 1996 College World Series experience, loss of the opportunity to play NCAA Division 1 baseball, and loss of professional baseball opportunities.

We agree with the trial court that Hendricks's claims for lost professional baseball opportunities, lost 1996 College World Series experience, and lost NCAA Division I baseball experience are too speculative to be compensated. However, we cannot say, as a matter of law, Hendricks suffered no damages. The issue of the remaining damages is remanded to the trial court for further consideration.

## CONCLUSION

We reverse the trial court's ruling on Hendricks's negligence and contract causes of action. We affirm the trial court's determination that the Tort Claims Act applies to Hendricks's breach of fiduciary duty claim, but reverse the court's determination that Clemson's actions do not constitute gross negligence as a matter of law. We affirm the trial court's ruling that Hendricks's damages are speculative as related to lost professional baseball opportunities, lost 1996 College World Series experience, and lost opportunity for playing NCAA Division I baseball. However, we reverse the trial court's ruling as to the remaining damages. We remand this action to the trial court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HEARN, C.J., concurs.

HOWARD, J., dissents in separate opinion.

HOWARD, Judge, dissenting:

I respectfully disagree with the majority's conclusions, and I would affirm the trial court.

First and foremost, I do not believe Hendricks presented a viable claim for damages. As the majority points out in Part IV of the opinion, Hendricks asserted three categories of damage. The first claim is that he was damaged in the amount he expended for tuition, room, board, and other living expenses while at Clemson. However, nowhere does he allege that Clemson gave him an athletic scholarship whereby they contractually agreed to pay these college related expenses. He attended Clemson and paid the normal tuition and related costs, receiving the education he contracted to receive. Clemson provided the courses he enrolled in, and there is no allegation that Clemson withheld any benefit which he paid to receive. Consequently, I believe this element of damage fails as a matter of law.

Second, he claims his tuition and related costs at St. Leo when he returned to complete his education because he had foregone his scholarship to attend Clemson. However, he does not allege Clemson contractually agreed to allow him to

play on the varsity baseball team. Under his view of the facts, Clemson only agreed that he could try out for the team, and play if he was good enough. This was merely an expectation of a *chance* in the future to play, with no contractual right to insist upon playing. Consequently, under Hendricks's own view of the facts, he merely had a future expectation of an increased chance to play baseball at Clemson. Our supreme court has clearly stated that there is no cause of action in such circumstances. *Cf. Jones v. Owings,* 318 S.C. 72, 456 S.E.2d 371 (1995) (there is no cause of action in South Carolina for a decrease in chance of survival caused by mis-diagnosis in a claim for medical malpractice).

The third claimed category of damage is for a loss of an opportunity to play on the 1995–6 Clemson team and in the college world series, implicating his loss of the added exposure to professional baseball scouts and the experience that opportunity would have provided. Again, by their very nature, these allegations do not give rise to a cause of action. *Cf. Owings,* 318 S.C. 72, 456 S.E.2d 371.

I also disagree with the majority's conclusion that the evidence, taken in a light most favorable to Hendricks, gives rise to an inference of recklessness. I believe the trial court was correct in its analysis on this issue.

For these reasons, I would affirm the trial court, and would not address the other issues discussed in the majority opinion.