HEARD APRIL TERM, 1873.

## WISE vs. HARDIN.

An administrator cannot question the validity of a judgment confessed by his intestate, upon any ground for which the intestate himself could not have questioned it; as, for instance, mere inadequacy of consideration, or that it was intended as a fraud upon creditors; nor, it seems, can his creditors question it if the estate is sufficient for the payment of debts.

A, being indebted, as endorser of a draft, to an insolvent bank, requested B, who was his attorney and legal adviser, to purchase bills of the bank, then selling at about 25 cents on the dollar, and pay the draft for him. B did so, the bank taking the bills at their face value, and A gave B a confession of judgment for the amount of the draft. A died, and his administrator, with knowledge of the circumstances, paid the judgment: *Held*, That the administrator was entitled to credit on his account for the amount of the payment.

A confession of judgment by a client to his attorney, if made with entire fairness and full knowledge of all circumstances, is not void merely because the value of the consideration is not equal to the amount of the confession.

BEFORE THOMAS, J., AT CHESTER, JANUARY TERM, 1872.

This was a bill in equity, filed March 27th, 1869, by John Hardin, administrator of Jesse Cornwell, deceased, against Jesse H. Hardin and others, heirs and creditors of the intestate, for a sale of the real estate, in aid of the personalty, and for settlement of the estate. John Hardin afterwards died, and in June, 1871, Cynthia Wilkes, as administrator *de bonis non* of the estate, was substituted as plaintiff in his stead. She then died, and finally Alexander Wise, as administrator *de bonis non* of the intestate, was substituted as plaintiff in the bill. The bill was further amended by making the executor of John Hardin a party defendant.

The case came before the Court on exceptions, by the heirs and distributees of the intestate, to the report of a Referee, to whom the accounts of John Hardin, as administrator of the intestate, had been referred. The exceptions related to certain payments made by the administrator, in 1867 and 1868, on a judgment for $5,547.38, which, on the 27th March, 1866, the intestate had confessed to Giles J. Patterson.

The facts were as follows:

At the close of the war the intestate was indebted to the Bank of Chester in the sum of $12,000 and over, on a draft which he had endorsed for one Dunovant, who had removed to Texas. He was much disturbed in his mind about this debt, and frequently consulted Giles J. Patterson, who was his attorney and legal adviser, in reference thereto. By Mr. Patterson's advice, he purchased bills of the Bank of Chester to the amount of $7,000, and paid them on the draft, leaving a balance due thereon, which, on the 6th March, 1866, amounted to $5,547.38. The bills of the Bank of Chester were then selling at from 24 to 29 cents on the dollar, but he was unable, either with his own means or by borrowing, to raise the money with which to buy the bills to pay this balance. Patterson then, at his urgent request, agreed to take up the draft. He accordingly purchased bills of the bank to a sufficient amount, and with them paid the draft for Cornwell, as endorser. He then delivered the draft to Cornwell, who desired to get possession in order to send it to Texas for collection from Dunovant. It was sent to Texas, and after Cornwell's death his administrator effected a settlement with Dunovant by which he secured $3,200 for the estate.

It further appeared that Cornwell had two mulatto children— daughters—by one of his former slaves, about whose education, social position, and prospects in life, he was much concerned; that he desired to do something for them; and that one of his inducements for giving the confession was, that Mr. Patterson told him, that after reimbursing himself for the amount he had paid for the bills of the bank, he would hold the balance of the confession for the benefit of those children, stating, however, that he was not to be considered as bound in law, but only in conscience, to perform the promise.

It further appeared that Hardin, the administrator, was fully informed by Patterson of all the circumstances connected with the giving of the confession, the consideration thereof, and the inducements for giving it; that eminent counsel was consulted on behalf of Hardin, who gave a written opinion to the effect that the judgment could not be impeached for fraud or want of consideration; that the administrator might safely pay it, especially as no creditor had given him notice not to do so; and that Patterson had the legal right to use the money as he pleased. He might appropriate the

whole to his own use, or he might use a part for the benefit of the illegitimate daughters of Cornwell.

The payment of the judgment by the administrator was sustained by the Referee, but His Honor held that the administrator was entitled to credit for only so much as Patterson paid for the bills with which he purchased the draft and interest thereon, and a decree was entered accordingly.

The executor of the administrator appealed.

*Patterson & Gaston*, for appellant.

*Hamilton, Hemphill, Brawley*, contra.

Aug. 12, 1874. The opinion of the Court was delivered by

MOSES, C. J. The case in the Court below, and on the argument here, appears to have been treated as if the only question raised by the exceptions, and to be determined under them, involved the validity of the judgment confessed by Jesse Cornwell to Patterson. It would not necessarily follow that if the objections to the judgment, on the part of the respondent, prevailed, the payment referred to in the pleadings made by John Hardin, as administrator of Jesse Cornwell, would amount to a *devastavit*, for which his estate would be liable by the proceedings now before the Court. Alexander Wise, the respondent, is bound by the judgment against his intestate, and is estopped from averring that it was without consideration, or assuming any position in regard to it that his intestate would not be permitted to hold. He would not even be allowed to show that it was intended by the intestate to be in fraud of his creditors, for he can no more make an averment against his act than could the intestate himself.—*Chappell* vs. *Brown*, 1 Bail., 532; *Anderson* vs. *Belcher*, 1 Hill, 246; *Tomlinson* vs. *Tomlinson*, 10 Rich., 404; *Vase* vs. *Hannahan*, 10 Rich., 472.

Assuming even that a *devastavit* is charged by the creditors of Cornwell, by reason of the payments made by the administrator to Patterson, (and it is difficult to say whether they are before the Court on that exception,) they are not in a position to allege a *devastavit*, because it does not appear that the estate may not be ample to meet all of its liabilities. On the account, as it now stands, there is a balance in the hands of the administrator. The pleadings show that there are other assets to be collected, and the real estate liable for debts still remains unsold.

For aught that is shown by the brief, there may be sufficient means to pay all the creditors, and they have no right to charge any wrongful administration on the part of John Hardin, unless it in some way prejudices the collection of their debts.

Not so, however, with the heirs and distributees. They have a direct interest in the estate of the intestate, Jesse Cornwell, and may question any act of his administrator which tends to their injury by diminishing the amount to which they may be entitled, after the payment of all outstanding debts.

It is not disputed that all the facts and incidents connected with the transfer of the draft by the Bank of Chester, and the confession by Cornwell, were known to Hardin. They were fully, and without reservation of any kind, communicated to him by Patterson, who cannot be charged with any purpose to mislead, by withholding from him any of the transactions between himself and the intestate in regard to the debt, or from failing to inform him of the exact relation in which he stood to it. The payments, which are now the subject of complaint, were made with complete knowledge of all the circumstances which surrounded the debt.

It will be borne in mind that the proceedings here are not to compel Patterson to allow his judgment to stand for only the value of the bank bills, which were the consideration of the transfer of the draft, or to require him to restore to Hardin, the administrator, the difference between such value and the full amount which he received as payment, for Patterson is not even a party to the suit. Hardin alone is pursued on the charge of a *devastavit*, and if convicted, his representative (he being dead) must be left to his remedy against Patterson, if he has any, in such manner as he may be advised.

Although the judgment of the Court cannot, in this case, affect the validity of the judgment, still, so far as the heirs and distributees of Cornwell are concerned, we must necessarily inquire whether it was of a character to be recognized by the administrator as a legitimate debt, the payment of which, in the due course of his administration, he was bound to make, to the full amount appearing due.

In all matters, either of contract or gift, between attorney and client, from the confidential relation which must necessarily exist between them, the law requires not only proof of fairness on the part of the former, but the influence which their relative position

allows him to exercise demands that severe and rigorous fairness which can leave nothing of doubt or uncertainty behind.

While it is not the exact relation which exists between trustee and *cestui que trust,* where the contract between them can be avoided at the mere will of the latter, a very refined equity has exacted that the rules and requirements which apply to this fiduciary connection shall, to a great extent, regulate and control all contracts and gifts between attorney and client.    They must, therefore, be shown not only to be clear of actual but of constructive fraud.

The principle is well summed up by Story in his Equity Jurisprudence, Vol. 1, Sec. 311 : "On the one hand, it is not necessary to establish that there has been fraud or imposition on the client, and, on the other hand, it is not necessarily void throughout, *ipso facto.* But the burden of establishing its perfect fairness, adequacy and equity, is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person, placing a confidence in him, is bound to show that a reasonable use has been made of that confidence—a rule applying equally to all persons standing in confidential relations with each other."    The proposition thus announced is but the result of the comparison of all the authorities, and the facts and circumstances of each particular case are to direct the conclusion which is to follow from them.    Thus, in *Edwards* vs. *Myrick,* (2 Hare, 24 E. C. R., 68,) Vice Chancellor Wigram said : "It was not insisted in argument that a solicitor is under an actual incapability to purchase from his client.    The rule the Court imposes is that, inasmuch as the parties stand in a relation which gives, or may give, the solicitor an advantage over the client, the *onus* lies on the solicitor to prove that the transaction was fair."

In *Howell* vs. *Ransom & Johnson,* 11 Paige, 538, it was required of the attorney " to show that he communicated to his client everything necessary to enable him to form a correct judgment as to the real value of the subject of the purchase, and as to the propriety of selling for the price offered.    And the neglect of the attorney to inform himself of the true state of the facts will not enable him to sustain a purchase from his client for an inadequate consideration." Judge Johnson, in delivering the opinion of the Court of Appeals in *Niles* vs. *Ervin,* 1 McC. Ch., 549, says : "I conclude, therefore, that all contracts between attorney and client in relation to property in litigation are not necessarily void on the ground of that

relationship; but that, to render it so, it must appear that it was used to the prejudice of the client. As a matter of proof, it is impossible to lay down any rule as to what will or will not constitute sufficient evidence of it." When adequacy of price is spoken of, it is not to be understood as referring to the intrinsic value of the article, but " the full amount," as was said in *Harris* vs. *Tremenheere*, 15 Ves., 42, " that he could have obtained from any other person."

Applying these rules, we see nothing in the conduct of Patterson that subjects him even to any animadversion for his whole course, in regard to his business relations with Cornwell, as they have been developed in this case. No information was withheld, no deceit or falsehood practiced, no retention of information which might possibly have dissuaded Cornwell from his course in relation to the draft and the confession. So far from eagerly availing himself of the opportunity of a speculation, through the offer of Cornwell, at his request, he proposed to Simpson to enter into the arrangement, and Cornwell had, himself, applied to several, who declined.

Patterson had actually subjected himself to the chance of loss by the purchase, at the request of Cornwell, of bills of the Bank of Chester, to the amount of $10,000, for $7,000 of which could he (Cornwell) only pay, leaving the remainder in the hands of Patterson, at the risk of his loss by depreciation.

Cornwell, when he made the confession, knew that the draft had been transferred to Patterson, in consideration of bills of the Bank of Chester, which had greatly fallen in value. With this knowledge he confessed judgment for the whole amount due on the face of the draft. It was done on full deliberation, and with a purpose to provide, through a friend on whom he could rely, something for his children, about whose condition he was much disturbed and disquieted. If any portion of the sum confessed had even been intended as a gift to Patterson, and not as a benefit for the children, in the absence of any fraud or imposition on his part, the transaction could not be avoided by the heirs and distributees of the intestate. How far the performance of the trust accepted by Patterson may be compelled by the Courts, or how far it may rest alone on his honor and conscience, can not change the aspect in which we are bound to regard the case as made.

There are other circumstances which would go far to sustain the payment by the administrator, John Hardin, so as to prevent its operating as a *devastavit* against him. Even with a knowledge of

all the facts relating to the confession, he did not act until the opinion of able counsel assured him he could do so with impunity. Now, although it may be true, as was said in *Doyle* vs. *Blake*, 2 Sch. and Lef., 243, that "the Court must proceed, not upon the improper advice under which an executor may have acted, but upon the acts he has done," the fact that one entrusted with the performance of legal duty seeks advice from those whose ability in their profession renders them safe and proper guides, is a circumstance from which honest intention and good faith are to be inferred. It cannot be doubted that the incidents connected with the transfer of the draft and the confession of judgment were notorious in the community where these parties reside. The confession was a matter of record, and carried with it the consideration on which it was founded, and yet not a word of notice was given to the administrator, by any interested in the estate, to question its validity.

To make him liable, under the circumstances, would be, as was said by the Master of the Rolls in *Vez* vs. *Emery*, 5 Ves., 144, "to permit a testator to lay a trap for his executor."

It is ordered that so much of the judgment of the Circuit Court as sustains the exception to the report of the Referee, as to the payments made by John Hardin, as administrator of Jesse Cornwell, to G. J. Patterson, on his confession of judgment, be reversed, and the case remanded for such further proceedings as may be necessary.

*Wright*, A. J., concurred.

WILLARD, A. J. I am of opinion that the judgment confessed by Cornwell to Patterson was intended as collateral security, between the parties, to cover such advances as Patterson should make, for the purpose of extinguishing the draft, by the purchase and payment to the bank holding such draft of its bills, then at a large discount, and also such sum as would be reasonable compensation to Patterson for his personal services in the matter, the advances made by him, and his expenses ; that the administrator had a clear equity to reduce the amount of the judgment to a sum that would express the true equitable relations between the parties ; that, as he possessed full knowledge of the facts, the payment in full was improper ; that he had a right to take the judgment of a Court of Equity upon the validity and extent of Patterson's claim, but, having preferred to rely upon the opinion of counsel, he is respon-

sible for the correctness of the course of action pursued by him under such advice.

I conclude that the judgment of the Circuit Court should be set aside and the cause remanded for conformity to the foregoing principles.