23377

Judith Minyard HOTZ, individually and on behalf of the shareholders of Minyard-Waidner, Inc., Appellant v. Tommy MINYARD, Minyard-Waidner, Inc., a South Carolina corporation, Robert A. Dobson, III, Dobson and Dobson, P.A., and Dobson, Lewis & Saad, P.A., Respondents.

(403 S.E. (2d) 634)

Supreme Court

*Jefferson V. Smith, Jr.* and *Jeffrey A. Merriam, Carter, Smith, Merriam, Rogers & Traxler, P.A.,* Greer, *for appellant.*

*William M. Grant, Jr., Grant & Leatherwood,* and *O.W. Bannister, Jr.,* Greenville, *for respondents Tommy Minyard* and *Minyard-Waidner, Inc.*

*R. Frank Plaxco* and *Steven E. Farrar, Leatherwood, Walker, Todd & Mann,* Greenville, *for respondents Robert A. Dobson, III* and *Dobson and Dobson, P.A.*

*R. Davis Howser, Deborah Harrison,* and *Charles E. Car-*

*penter, Jr., Richardson, Plowden, Grier & Howser,* Columbia, *for respondents Robert A. Dobson, III* and *Dobson, Lewis & Saad, P.A.*

Heard Jan. 21, 1991.

Decided April 8, 1991.

GREGORY, Chief Justice:

This appeal is from an order granting respondents summary judgment on several causes of action. We reverse in part and affirm in part.

Respondent Minyard (Tommy) and appellant (Judy) are brother and sister. Their father, Mr. Minyard, owns two automobile dealerships, Judson T. Minyard, Inc. (Greenville Dealership), and Minyard-Waidner, Inc. (Anderson Dealership). Tommy has been the dealer in charge of the Greenville Dealership since 1977. Judy worked for her father at the Anderson Dealership beginning in 1983; she was also a vice-president and minority shareholder. In 1985, Mr. Minyard signed a contract with General Motors designating Judy the successor dealer of the Anderson Dealership.

Respondent Dobson is a South Carolina lawyer practicing in Greenville and a member of respondent Dobson & Dobson, P.A. (Law Firm). Dobson is also a certified public accountant, although he no longer practices as one. In 1985, Dobson sold the tax return preparation practice of law Firm to respondent Dobson, Lewis & Saad, P.A. (Accounting Firm). Although his name is included in Accounting Firm's name, Dobson is merely a shareholder and director and does not receive remuneration as an employee.

Dobson did legal work for the Minyard family and its various businesses for many years. On October 24, 1984, Mr. Minyard came to Law Firm's office to execute a will with his wife, his secretary, and Tommy in attendance. At this meeting he signed a will which left Tommy the Greenville Dealership, gave other family members bequests totalling $250,000.00, and divided the remainder of his estate equally between Tommy and a trust for Judy after his wife's death. All present at the meeting were given copies of this will. Later that afternoon, however, Mr. Minyard returned to Dobson's office and signed a second will containing the same provisions as the

first except that it gave the real estate upon which the Greenville dealership was located to Tommy outright. Mr. Minyard instructed Dobson not to disclose the existence of the second will. He specifically directed that Judy not be told about it.

In January 1985, Judy called Dobson requesting a copy of the will her father had signed at the morning meeting on October 24, 1984. At Mr. Minyard's direction, or at least with his express permission, Dobson showed Judy the first will and discussed it with her in detail.

Judy testified she had the impression from her discussion with Dobson that under her father's will she would receive the Anderson Dealership and would share equally with her brother in her father's estate. According to Dobson, however, he merely explained Mr. Minyard's intent to provide for Judy as he had for Tommy when and if she became capable of handling a dealership. Dobson made a notation to this effect on the copy of the will he discussed with Judy. Judy claimed she was led to believe the handwritten notes were part of her father's will.

In any event, Judy claims Dobson told her the will she was shown was in actuality her father's last will and testament. Although Dobson denies ever making this express statement, he admits he never told her the will he discussed with her had been revoked.

In January 1986, Mr. Minyard was admitted to the hospital for various health problems. In April 1986, he suffered a massive stroke. Although the date of the onset of his mental incompetence is disputed, it is uncontested he is now mentally incompetent.

Judy and Tommy agreed that while their father was ill, Judy would attend to his daily care and Tommy would temporarily run the Anderson Dealership until Judy returned. During this time, Tommy began making changes at the Anderson Dealership. Under his direction, the Anderson Dealership bought out another dealership owned by Mr. Minyard, Judson Lincoln-Mercury, Inc., which was operating at a loss. Tommy also formed a holding company which assumed ownership of Mr. Minyard's real estate leased to the Anderson Dealership. Consequently, rent paid by the dealership was greatly increased.

Judy questioned the wisdom of her brother's financial dealings. When she sought to return to the Anderson Dealership as successor dealer, Tommy refused to relinquish control. Eventually, in August 1986, he terminated Judy from the dealership's payroll.

Judy consulted an Anderson law firm concerning her problems with her brother's operation of the Anderson Dealership. As a result, on November 15, 1986, Mr. Minyard executed a codicil removing Judy and her children as beneficiaries under his will. Judy was immediately advised of this development by letter.

In March 1987, Judy met with Tommy, her mother, and Dobson at Law Firm's office. She was told if she discharged her attorneys and dropped her plans for a lawsuit, she would be restored under her father's will and could work at the Greenville Dealership with significant fringe benefits. Judy testified she understood restoration under the will meant she would inherit the Anderson Dealership and receive half her father's estate, including the real estate, as she understood from her 1985 meeting with Dobson. Judy discharged her attorneys and moved to Greenville. Eventually, however, Tommy terminated her position at the Greenville Dealership.

As a result of the above actions by Tommy and Dobson, Judy commenced this suit alleging various causes of action. The causes of action against Tommy for tortious interference with contract, a shareholder derivative suit for wrongful diversion of corporate profits, and fraud survived summary judgment and are not at issue here. Judy appeals the trial judge's order granting summary judgment on the remaining causes of action against Tommy, Dobson, and the professional associations. We address only the trial judge's ruling on the cause of action against Dobson for breach of fiduciary duty. Judy also appeals the dismissal of Minyard-Waidner, Inc. as a party defendant.

## ANALYSIS

Judy's complaint alleges Dobson breached his fiduciary duty to her by misrepresenting her father's will in January 1985. As a result, in March 1987 she believed she would regain the Anderson Dealership if she refrained from pursuing her claim against her brother. This delay gave Tommy additional time in control of the Anderson Dealership

during which he depleted its assets. Law Firm and Accounting Firm are charged with vicarious liability for Dobson's acts.

The trial judge granted Dobson, Law Firm, and Accounting Firm summary judgment on the ground Dobson owed Judy no fiduciary duty because he was acting as Mr. Minyard's attorney and not as Judy's attorney in connection with her father's will. We disagree.

We find the evidence indicates a factual issue whether Dobson breached a fiduciary duty to Judy when she went to his office seeking legal advice about the effect of her father's will. Law Firm had prepared Judy's tax returns for approximately twenty years until September 1985 and had prepared a will for her she signed only one week earlier. Judy testified she consulted Dobson personally in 1984 or 1985 about a suspected misappropriation of funds at one of the dealerships and as late as 1986 regarding her problems with her brother. She claimed she trusted Dobson because of her dealings with him over the years as her lawyer and accountant.

A fiduciary relationship exists when one has a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith. *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 599, 358 S.E. (2d) 150, 152 (Ct. App. 1987). An attorney/client relationship is by nature a fiduciary one. *In re: Green*, 291 S.C. 523, 354 S.E. (2d) 557 (1987). Although Dobson represented Mr. Minyard and not Judy regarding her father's will, Dobson did have an ongoing attorney/client relationship with Judy and there is evidence she had "a special confidence" in him. While Dobson had no duty to disclose the existence of the second will against his client's (Mr. Minyard's) wishes, he owed Judy the duty to deal with her in good faith and not actively misrepresent the first will. We find there is a factual issue presented whether Dobson breached a fiduciary duty to Judy. We conclude summary judgment was improperly granted Dobson on this cause of action. *See Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, — S.C. —, 392 S.E. (2d) 460 (1990) (summary judgment).

Similarly, we find evidence to present a jury issue whether Law Firm should be held vicariously liable for Dobson's conduct since Dobson was acting in his capacity as a lawyer when he met with Judy to discuss the will in

January 1985. There is no evidence, however, that Dobson was acting in his capacity as an accountant on that occasion since he was giving legal advice and not rendering accounting services. We find no basis for vicarious liability against Accounting Firm. Accordingly, we reverse the granting of summary judgment on this cause of action as to Dobson and Law Firm and affirm as to Accounting Firm.

Finally, the trial judge dismissed Minyard-Waidner, Inc., the Anderson Dealership, as a party defendant on the ground the complaint contains no allegation of wrongdoing by the corporate entity. Judy claims the corporation is the real party in interest in her shareholder's derivative action and should not be dismissed from the action.

Under former S.C. Code Ann. § 15-5-40 (1976), it was required that parties united in interest be joined as plaintiffs or defendants. A party whose consent could not be obtained could be named as a defendant. This Court never construed § 15-5-40 in the context of a shareholder derivative suit and it has now been superseded by the South Carolina Rules of Civil Procedure. Rule 23(b), SCRCP, governing derivative suits makes no mention of the need to name the corporation as a party defendant. Other jurisdictions have held that a shareholder derivative suit must be dismissed if the corporation is not named as a party defendant where the corporation is not defunct. *See, e.g., Wagner v. Bisco*, 190 Ga. 474, 9 S.E. (2d) 650 (1940). The reasoning for such a rule is that the court must have all interested parties before it to fix their respective rights. Further, because a stockholder has no power to bind the corporation, the corporation must be named as a defendant if it has not brought the action in its own right. *Id.* While we decline at this time to adopt such a requirement, we hold a corporate defendant may be named in a shareholder's derivative suit as a party defendant even where no wrongdoing by the corporate entity is alleged.

Pursuant to Supreme Court Rule 23, we affirm the trial judge's order granting summary judgment on the remaining causes of action. The judgment of the circuit court is

Reversed in part; affirmed in part.

HARWELL, CHANDLER, FINNEY, and TOAL, JJ., concur.