716 S.E.2d 920

**Deborah W. SPENCE, Individually, and on Behalf of the Estate of Floyd D. Spence, Respondent,**

v.

**Kenneth B. WINGATE; Sweeny, Wingate & Barrow, P.A.; and Robert P. Wilkins, Jr., Defendants,**

**of whom Kenneth B. Wingate and Sweeny, Wingate & Barrow, P.A. are Petitioners.**

No. 27055.

Supreme Court of South Carolina.

Heard May 3, 2011.

Decided Oct. 17, 2011.

Rehearing Denied Nov. 17, 2011.

150

Pope D. Johnson, III, of Johnson & Barnett, L.L.P., of Columbia, for Petitioners.

A. Camden Lewis, of Lewis & Babcock, L.L.P., of Columbia, for Respondent.

Acting Chief Justice BEATTY.

In this action, Deborah W. Spence ("Mrs. Spence") alleges attorney Kenneth Wingate and his law firm ("Wingate")[1] breached a fiduciary duty to her as a former client regarding the handling of her late husband's congressional life insurance policy. The circuit court granted partial summary judgment to Wingate, finding as a matter of law that Wingate did not owe any fiduciary duties in this regard. The Court of Appeals reversed and remanded the matter for trial, holding summary judgment was inappropriate because a genuine issue of material fact existed as to what, if any, fiduciary duties were owed by Wingate to Mrs. Spence and whether those duties were breached. *Spence v. Wingate*, 385 S.C. 316, 684 S.E.2d 188 (Ct.App.2009) (*Spence III*). This Court granted Wingate's petition for a writ of certiorari. We affirm as modified.

## I. FACTUAL/PROCEDURAL BACKGROUND

This case has a complex history and has been before the appellate courts on three prior occasions. The current dispute concerns the handling of a $500,000 Federal Group Life Insurance Policy held by Congressman Floyd D. Spence[2] ("Mr. Spence"), Mrs. Spence's late husband. The facts, viewed in the light most favorable to Mrs. Spence as required by our standard of review, are as follows.

---

1. "Wingate" shall refer to Wingate individually and also his law firm, where appropriate.

2. Mr. Spence's name appears as Floyd W. Spence in the prior appeals, but it has been corrected here to Floyd D. Spence.

Mr. Spence was a member of United States House of Representatives, and he held a life insurance policy of $500,000 as a member of Congress. On October 12, 1988, Mr. Spence executed a Designation of Beneficiary form that named Mrs. Spence and his four sons from a prior marriage as the beneficiaries of the congressional life insurance policy, with all five to receive equal shares of the proceeds.

On March 15, 1990, Mr. Spence executed a codicil to a 1987 will he had made before his marriage. In the codicil Mr. Spence bequeathed to Mrs. Spence all of his interest and shares of stock in Spence Plantation, Inc., as well as 22 acres of real estate that was subject to a development agreement. The property was located at Lake Murray, South Carolina. According to Mrs. Spence, in 1994 her husband also named her the sole beneficiary of all federal and congressional benefits, including the life insurance policy.[3]

In August 2001, Mr. Spence was hospitalized in Mississippi. He suffered a subdural hematoma while in the hospital and thereafter underwent surgery. On or about August 9, 2001, Mrs. Spence was informed that her husband had suffered brain damage from the subdural hematoma, was in a coma, and was not expected to survive.

Mrs. Spence sought legal counsel and on August 13, 2001, Wingate undertook representation of Mrs. Spence with regards to the assets of her husband, her inheritance rights, and her rights in his estate. Wingate advised Mrs. Spence that she was entitled to nothing from her husband's estate and that she was barred from receiving an elective share by a prenuptial agreement.[4] During the course of this representation, Mrs. Spence consulted with Wingate about her husband's life insurance policy and "informed Wingate that [her] husband had named [her] as beneficiary."

---

3. Mrs. Spence's attorney explained at the summary judgment hearing that Mr. Spence executed and submitted the necessary forms to make the change, but the congressional benefits office apparently had the prior form on file at the time of Mr. Spence's death.

4. On July 1, 1988, just a few days before their marriage, the parties signed a prenuptial agreement, but the agreement did not contain financial disclosures and Mrs. Spence did not have independent counsel, so Mrs. Spence and Wingate ultimately came to believe the prenuptial agreement was probably unenforceable.

To resolve any disputes about the effect of the 1987 will and 1990 codicil and her elective share rights, Wingate advised Mrs. Spence to enter into an agreement with the four adult sons of Mr. Spence to create a trust for her benefit. The trust was to provide Mrs. Spence with a lifetime income stream, and it was to be created and funded from one-third of the value of Mr. Spence's probate estate applying a pecuniary formula. Wingate negotiated the agreement concerning the division of Mr. Spence's probate estate, and the parties formally entered into an "Agreement Among Successors to Floyd Davidson Spence, Sr." on or around August 15, 2001.

Mr. Spence died on August 16, 2001. Sometime between August 23, 2001 and the first week of September 2001, Wingate and attorney Robert P. Wilkins, Jr.[5] visited Mrs. Spence and informed her that Wingate had agreed to represent the estate. Wingate also advised her that she no longer needed an attorney. Wingate never informed Mrs. Spence of any potential conflict of interest that he had in representing the estate, nor did he seek her consent to, or a waiver of, any conflict of interest.

Mrs. Spence thereafter came to believe that the amount she received under the agreement negotiated by Wingate was much less than what she was entitled to under the will and codicil or if she had opted for an elective share as provided by South Carolina law. Mrs. Spence met with Wingate, Wilkins, Mr. Spence's four sons, and others in a family meeting. The estate and the life insurance policy were discussed by the parties. According to Mrs. Spence, "Wingate suggested that the boys receive the insurance in what he termed an effort for me to make the boys 'whole again.'" However, Mrs. Spence objected to the insurance proceeds being divided five ways, in contravention of what she stated were her husband's wishes.

Mrs. Spence called Ken Wingate after the meeting and asked him to put his hat back on as her attorney and he refused. Mrs. Spence stated Wingate never advised her that she needed to take any action to protect her rights with regard to the insurance benefits or that she needed to hire a

5. Wilkins was the developer for the 22 acres procured by Mr. Spence and reportedly recommended Wingate as the attorney for Mrs. Spence.

different lawyer to represent her regarding the insurance benefits.[6]

Mrs. Spence thereafter brought a lawsuit to set aside the agreement creating the trust. Wingate withdrew as counsel for the estate in August 2002, around the time of the lawsuit. The agreement was eventually set aside.

Mrs. Spence, individually and on behalf of her late husband's estate, filed the current action against Wingate.[7] She alleged several causes of action; however, the focus here concerns her claim for breach of fiduciary duty. Mrs. Spence alleged Wingate failed to disclose any potential conflict of interest created by him representing her and then the estate, and that he failed to either obtain her waiver of this conflict or to protect her interests, breaching his fiduciary duty.[8] Mrs. Spence further alleged Wingate failed to protect her interests regarding the proceeds of the $500,000 life insurance policy, for which she was the sole beneficiary. Mrs. Spence asserted Wingate owed her a fiduciary duty because Wingate had served as her lawyer and he had discussed the insurance policy issue with her during the course of this representation.

Wingate moved for partial summary judgment requesting a ruling that he was not liable to Mrs. Spence (individually or on behalf of the estate) in connection with the congressional life insurance policy. Wingate asserted the life insurance policy was paid based upon a contract, it was a non-probate asset,

---

6. The Members Services Office of the United State House of Representatives ultimately paid the proceeds of the life insurance policy in equal shares to Mrs. Spence and each of the four sons.

7. Mrs. Spence also named attorney Wilkins as a defendant. However, Wilkins is not a party to this appeal.

8. Mrs. Spence's attorney stated at the hearing in this matter that a conflict arose because Wingate negotiated an agreement using a pecuniary formula as opposed to providing for a one-third share of the estate to be set aside as a trust for life for Mrs. Spence. The pecuniary formula was based on arriving at a value for each of the assets in the estate, and then the trust was to be funded using a one-third share based on what that number was. A conflict arose due to the competing interests of the estate (which wanted a lower value on the estate assets because it would lower the estate taxes and the charge to the estate) and Mrs. Spence (who had an interest in obtaining a higher value on the estate assets because her share was to be funded using the pecuniary formula).

and the manner in which it was paid was not controlled by the personal representative of the estate or by himself. Additionally, any claims related to the manner in which the benefits were to be paid belonged to any potential beneficiaries of the policy, not the estate.[9]

At the summary judgment hearing, Wingate further argued no duty was owed to Mrs. Spence individually because at the time the dispute arose concerning the insurance he was acting solely as attorney for the estate and, thus, section 62–1–109 of the South Carolina Code prevented any duty from being owed to Mrs. Spence as a beneficiary of the estate. In contrast, Mrs. Spence asserted that when a former client comes to a lawyer and asks for legal advice on an issue related to the former representation, the lawyer has a fiduciary duty to that client. Thus, Wingate breached his fiduciary duty to her by failing to either take action to properly advise her in the matter of the insurance policy or to advise her that she needed to consult a different attorney to protect her interests. She noted that Wingate opened a file purporting to represent the estate on August 15, 2001, merely two days after he undertook to represent her, and that his representation of her and then the estate's interests created a conflict of interest that she was not advised of and did not approve.

The circuit court granted partial summary judgment in favor of Wingate and found that, "[b]y statute, [Wingate] owed no duty or obligation to [Mrs. Spence] in connection with the congressional life insurance policy or the manner in which it was paid." The circuit court relied upon section 62–1–109 of the South Carolina Code and found Wingate owed no fiduciary duty to Mrs. Spence as a mere beneficiary of the estate.

Mrs. Spence appealed, arguing a genuine issue of material fact existed regarding whether Wingate breached a fiduciary duty owed to her arising from his earlier representation of her in a related matter. The Court of Appeals reversed the grant of summary judgment to Wingate and remanded the matter for trial in *Spence III*.[10]

---

9. Wingate made additional motions for summary judgment that were also addressed in the circuit court's order. These rulings are not at issue here.

10. In the first appeal, the Court of Appeals affirmed in a split decision (2–1) on error preservation grounds, finding Mrs. Spence should have

Citing *Hotz v. Minyard,* 304 S.C. 225, 403 S.E.2d 634 (1991) and Rule 1.9(a), RPC, Rule 407, SCACR, the Court of Appeals explained: "Duties to a former client on a related matter are separate and distinct from any duties arising from Wingate's representation of the estate; therefore, the circuit court erred in finding section 62-1-109 of the South Carolina Code [ ] absolved Wingate of any duty he owed to [Mrs. Spence]." *Spence III,* 385 S.C. at 320, 684 S.E.2d at 191. The Court of Appeals concluded a factual issue exists regarding what if any fiduciary duties were owed to Mrs. Spence, and whether these duties were breached. *Id.* at 319, 684 S.E.2d at 190. This Court granted Wingate's petition for a writ of certiorari to review the *Spence III* decision.

## II. STANDARD OF REVIEW

Rule 56(c) of the South Carolina Rules of Civil Procedure provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether any triable issues of fact exist, the trial court must view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the party opposing the motion. *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.,* 386 S.C. 108, 687 S.E.2d 29 (2009). An appellate court applies the same standard used by the trial court under Rule 56(c) when reviewing the grant of a motion for summary judgment. *Id.* Because summary judgment is a drastic remedy, it should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004).

---

made a Rule 59(e), SCRCP motion. *Spence v. Wingate,* 378 S.C. 486, 663 S.E.2d 70 (Ct.App.2008) (*Spence I* ). This Court granted certiorari on *Spence I* and reversed and remanded the matter to the Court of Appeals for a ruling on the merits. *Spence v. Wingate,* 381 S.C. 487, 674 S.E.2d 169 (2009) (*Spence II* ). Upon remand, the Court of Appeals reversed the circuit court's order granting summary judgment to Wingate and remanded the matter for trial. *Spence III,* 385 S.C. at 320, 684 S.E.2d at 191.

## III. LAW/ANALYSIS

We granted certiorari to review the Court of Appeals's conclusion that the existence of a fiduciary duty is a question of fact and to evaluate its treatment of *Hotz v. Minyard*, 304 S.C. 225, 403 S.E.2d 634 (1991) in reaching that conclusion. Wingate argues the Court of Appeals erred in reversing the grant of summary judgment because, as a matter of law, he owed no fiduciary duty to Mrs. Spence. Mrs. Spence asserts she was owed a fiduciary duty based on their former attorney-client relationship. Our review is limited to the determination of the existence a fiduciary duty, not its breach.

Initially, we note that section 62–1–109 of the South Carolina Code is not applicable to the issue of the congressional insurance policy. This section provides:.

Unless expressly provided otherwise in a written employment agreement, the creation of an *attorney-client relationship between a lawyer and a person serving as a fiduciary* shall not impose upon the lawyer *any duties or obligations to other persons interested in the estate, trust estate, or other fiduciary property,* even though fiduciary funds may be used to compensate the lawyer for legal services rendered to the fiduciary. This section is intended to be declaratory of the common law and governs relationships in existence between lawyers and persons serving as fiduciaries as well as such relationships hereafter created.

S.C.Code Ann. § 62–1–109 (2009) (emphasis added). A "fiduciary" as used here includes a personal representative, guardian, conservator, or trustee. *Id.* § 62–1–201(13).

The circuit court concluded Wingate, as the attorney for the estate, owed no duty or obligation to Mrs. Spence based on section 62–1–109 and her status as merely a "person[ ] interested in the estate." However, it is undisputed that the congressional life insurance policy in question was a nonprobate asset [11] and the manner in which it was paid was not controlled by the personal representative. The circuit court

---

11. "[P]robate estate means the decedent's property passing under the decedent's will plus the decedent's property passing by intestacy, reduced by funeral and administration expenses and enforceable claims." S.C.Code Ann. § 62–2–202 (2009).

specifically made this finding and neither party took exception; therefore, it is the law of the case.

On its face, section 62–1–109 limits duties only to third parties "interested in the estate, trust estate, or other fiduciary property." Thus, section 62–1–109 negates any duty owed by an attorney to persons other than the estate's representative in matters concerning estate assets or assets controlled in some manner by the personal representative.[12] Although Wingate represented the estate, the property in question was not a part of the estate and was not controlled by the personal representative; therefore, the protection provided by section 62–1–109 does not attach to Wingate on the issue of the congressional life insurance. The circuit court erred in granting summary judgment on the basis of section 62–1–109.

■ Turning to the question of the determination of the existence of a fiduciary duty, this Court has said "[a] fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser,* 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992).

Our courts have long recognized that an attorney-client relationship is, by its very nature, a fiduciary relationship. *Hendricks v. Clemson Univ.,* 353 S.C. 449, 578 S.E.2d 711 (2003); *Hotz v. Minyard,* 304 S.C. 225, 403 S.E.2d 634 (1991); *In re Green,* 291 S.C. 523, 354 S.E.2d 557 (1987); *Royal Crown Bottling Co. v. Chandler,* 226 S.C. 94, 83 S.E.2d 745 (1954); *Wise v. Hardin,* 5 S.C. 325 (1874); *Weatherford v. Price,* 340 S.C. 572, 532 S.E.2d 310 (Ct.App.2000).

■ "The relationship of an attorney with his or her client is 'highly fiduciary in its nature and of a very delicate, exacting and confidential character, requiring a high degree of

**12.** *See generally Douglass ex rel. Louthian v. Boyce,* 344 S.C. 5, 10, 542 S.E.2d 715, 718 (2001) (finding section 62–1–109's application to "other fiduciary property" refers to property controlled by the fiduciary; the Court held an attorney representing the personal representative in a wrongful death action does not have a duty to the statutory beneficiaries because section 62–1–109 "expressly negates any duty to persons interested in 'other fiduciary property,' which includes the proceeds of a wrongful death action since such an action is brought by a fiduciary").

fidelity and good faith.'" *Weatherford,* 340 S.C. at 582, 532 S.E.2d at 315 (quoting 7 Am.Jur.2d *Attorneys at Law* § 137 (1997)).

In finding summary judgment was inappropriate the Court of Appeals, citing *Hotz v. Minyard,* concluded a factual issue exists regarding *what if any fiduciary duties were owed* to Wife and whether these duties were *breached.*

In *Hotz,* the circuit court granted summary judgment in favor of attorney Robert A. Dobson III on Judy Hotz's claim for breach of fiduciary duty. *Hotz,* 304 S.C. at 229–30, 403 S.E.2d at 636–37. Dobson and Hotz had a long standing attorney-client relationship. *Id.* at 230, 403 S.E.2d at 637. Whenever she had legal questions she sought Dobson's counsel. *Id.* Hotz had met with Dobson to request a copy of her father's will of a certain date that had been prepared by Dobson; the will was favorable to Hotz. Dobson discussed the will with Hotz without telling her it had been revoked by a second will that he had also prepared. *Id.* at 227–28, 403 S.E.2d at 635–36. According to Dobson, his client (Hotz's father) had instructed him not to disclose the existence of the second will. *Id.* Hotz "claimed she trusted Dobson because of her dealings with him over the years as her lawyer and accountant." *Id.* at 230, 403 S.E.2d at 637. The circuit court ruled Dobson owed no fiduciary duty to Hotz because he was acting as her father's attorney and not as Hotz's attorney in connection with the will. *Id.* at 230, 403 S.E.2d at 637.

This Court reversed the grant of summary judgment, finding "the evidence indicates a factual issue [exists] whether Dobson *breached* a fiduciary duty to Judy [Hotz] when she went to his office seeking legal advice about the effect of her father's will." *Id.* (emphasis added). The Court stated although Dobson represented Hotz's father, not Hotz, regarding the will, "Dobson did have an ongoing attorney/client relationship with [Hotz] and there is evidence she had 'a special confidence' in him." *Id.* The Court further stated that, while Dobson had no duty to disclose the existence of a second will against the wishes of his client (Hotz's father), he owed Hotz a duty to deal with her in good faith and to not actively misrepresent the first will. *Id.* The Court then reiterated that a question of fact existed as to "whether Dobson breached a

fiduciary duty" to Hotz and "conclude[d] summary judgment was improperly granted to Dobson on this cause of action." *Id.*

■ *Hotz* did not state that whether a fiduciary duty is owed is a question of fact. However, the West headnotes indicate otherwise, which might have led to some confusion in later cases that have relied upon *Hotz* and cited it for this proposition. However, this Court has since expressly clarified any resulting mischaracterization of the *Hotz* case and held: "The determination of the existence of a duty is solely the responsibility of the court. Whether the law recognizes a particular duty is an issue of law to be decided by the Court." *Hendricks v. Clemson Univ.*, 353 S.C. 449, 456, 578 S.E.2d 711, 714 (2003) (citations omitted).

In *Hendricks*, this Court rejected the party's argument that whether a fiduciary duty was owed between a college advisor and a student created a question of fact:

> *Although whether a fiduciary relationship has been breached can be a question for the jury, the question of whether one should be imposed between two classes of people is a question for the court.* The Court of Appeals cites *Hotz v. Minyard* for the proposition that the existence of a fiduciary duty may be a factual question for the jury. 304 S.C. 225, 403 S.E.2d 634 (1991). In our opinion, they have misapprehended *Hotz* . . . . *The Court sent the issue of breach, not the existence of the relationship, to the jury.*

*Id.* at 459, 578 S.E.2d at 715–16 (emphasis added).

Thus, to the extent the Court of Appeals states in *Spence III* that a question of fact exists as to whether a fiduciary duty is *owed* in the current matter, this was error. However, we find the Court of Appeals was correct in determining summary judgment should be reversed because a question of fact exists as to whether Wingate *breached* a fiduciary duty to Mrs. Spence.

■ It is undisputed that attorneys owe fiduciary duties to existing clients. In addition, fiduciary duties created by an attorney-client relationship may be breached even though the formal representation has ended. *See, e.g., Burnett v. Sharp,* 328 S.W.3d 594 (Tex.App.2010) (holding the plaintiff's claim

against a former attorney for breach of fiduciary duty for failure to return the unearned portion of a retainer fee constituted a viable claim even though the attorney's representation had ended).

The Court of Appeals cited Rule 1.9(a) of the Rules of Professional Conduct in support of its conclusion that duties to a former client on related matters are separate and distinct from any duties arising out of Wingate's representation of the estate. Wingate, in turn, argues that an attorney's duty to a former client is limited to the requirements of Rule 1.9. We disagree. In *Hendricks*, we observed that "[a]n affirmative legal duty exists only if created by statute, contract, *relationship*, status, property interest, or some other special circumstance." *Hendricks*, 353 S.C. at 456, 578 S.E.2d at 714 (emphasis added).

We note that, although the Rules of Professional Conduct do not, in themselves, create a cause of action or establish evidence of negligence per se, they are relevant in assessing the legal duty of an attorney in a malpractice action. *Smith v. Haynsworth, Marion, McKay & Geurard*, 322 S.C. 433, 472 S.E.2d 612 (1996). "In order to relate to the standard of care in a particular case, . . . a Bar rule must be intended to protect a person in the plaintiff's position or be addressed to the particular harm." *Id.* at 437, 472 S.E.2d at 614 (citation omitted). It is the breach of a duty, not the breach of a rule, that is of determinative import. *Id.* at 436 n. 5, 472 S.E.2d at 614 n. 5. Duties owed to a former client are not controlled by the Rules of Professional Conduct. A review of the Scope of Rule 407, SCACR clearly indicates that the rules are intended for guidance and disciplinary purposes, not to form the basis for civil litigation.

We further agree with the Court of Appeals that "[d]uties to a former client on a related matter are separate and distinct from any duties arising from Wingate's representation of the estate; therefore, the circuit court erred in finding section 62–1–109 . . . absolved Wingate of any duty he owed to" Mrs. Spence. *Spence III*, 385 S.C. at 319–20, 684 S.E.2d at 190. Section 62–1–109 simply provides that an attorney acting as a fiduciary in a probate matter has no obligation, without more, to other parties with interests in the fiduciary property. This

statute does not purport to eliminate all obligations or duties the attorney might have to parties arising by other means. Thus, although Mrs. Spence is not owed a fiduciary duty based on her status as a beneficiary of the estate, she alleged Wingate's fiduciary duty arose based on their prior attorney-client relationship. Wingate himself concedes in his brief that an attorney owes a fiduciary duty to former clients. Contrary to the circuit court's conclusion, section 62–1–109 is not determinative of whether Mrs. Spence is owed a fiduciary duty as a former client.

## IV. CONCLUSION

We conclude Wingate owed a fiduciary duty to his former client, Mrs. Spence. This duty included, among other obligations, the obligation not to act in a manner adverse to her interests in matters substantially related to the prior representation. We agree with the Court of Appeals that whether Wingate breached a duty regarding the congressional life insurance policy is a question of fact for a jury to determine. Thus, we uphold the decision of the Court of Appeals to reverse the grant of summary judgment and remand this matter for trial. To the extent the Court of Appeals indicated whether a duty was owed was a question of fact for the jury, the decision is modified to recognize that whether a fiduciary relationship exists between two classes of persons is a matter to be determined by a court. Consequently, the decision of the Court of Appeals is affirmed as modified.

**AFFIRMED AS MODIFIED.**

Acting Justices JAMES E. MOORE and JOHN H. WALLER, JR., concur.

Acting Justice ALEXANDER MACAULAY concurring in part and dissenting in part in a separate opinion in which KITTREDGE, J., concurs.

Acting Justice MACAULAY:

I concur in part and respectfully dissent in part. I concur with the majority opinion that "the determination of the existence [of a] fiduciary duty is for the court" and not the jury. Nevertheless, under the allegations and undisputed

facts of this particular case, the Circuit Court's grant of summary judgment to Petitioners, "that they are not liable to Deborah W. Spence, individually, or the Estate of Floyd D. Spence, Sr. in connection with the congressional life insurance policy or the manner it was paid," should be affirmed and the Court of Appeals respectfully reversed.

The Respondent/Plaintiff's "*SECOND CAUSE OF ACTION* (Breach of Fiduciary Duty as to all Defendants)" merely asserts that the "Plaintiff and Defendants ... were in a fiduciary relationship as ... Defendants were counsel for Plaintiff," from whom, with the Defendant Wilkins, "she sought advice and counsel regarding the estate of her dying husband." As found by the majority, "Mrs. Spence sought legal counsel and on August 13, 2001, Wingate undertook the representation of Mrs. Spence with regards to the assets of her husband, her inheritance rights, and her rights in his estate." As noted by the majority, "it is undisputed that the congressional life insurance policy in question was a non-probate asset," and, further, "[a]lthough Wingate represented the estate, the property in question was not a part of the estate." The matters of the policy and the estate, *ergo*, are not related. Rule 407, 1.9(a), SCACR.

Moreover, as regards "the congressional life insurance policy in question," there was no "prior attorney-client relationship," until "Mrs. Spence sought legal counsel and on August 13, 2001, *Wingate undertook the representation of Mrs. Spence with regards to the assets of her husband, her inheritance rights, and her rights in his estate.*" (Emphasis supplied). It was only after and "[d]uring the course of this representation, Mrs. Spence consulted with Wingate about her husband's life insurance policy and 'informed Wingate that [her] husband had named [her] as beneficiary.'" Not only was there no confidential prior or "ongoing attorney/client relationship" regarding her husband's life insurance policy, but there is no allegation that Wingate "actively misrepresented" anything, *cf. Hotz v. Minyard*, 304 S.C. 225, 230, 403 S.E.2d 634, 637 (1991), "in connection with the congressional life insurance policy or the manner it was paid"—as the Circuit Court concluded in granting summary judgment. In fact, when "the estate and the life insurance were discussed by the parties" and others in a family meeting in October 2001,

Mrs. Spence acknowledged that there was no ongoing attorney/client relationship with regard to the subject policy and she called Wingate "after the meeting and asked him to put his hat back on as her attorney and he refused."

Mrs. Spence did retain counsel, who advised the representatives of "The Estate of Congressman Floyd David Spence" that their firm was asking the federal government for a review of the payments that were made pursuant to the policy and that they "[did] not expect this [will] have any impact on the estate." Accordingly, I would affirm the Circuit Court.

KITTREDGE, J., concurs.